No. 2:22-cv-04552-GGG-JVM
(On appeal from Bankruptcy Case No. 20-10846)

---

## *United States District Court for the Eastern District of Louisiana*

---

MINOR CHILDREN,

*Appellants*

v.

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,
OFFICIAL COMMITTEE OF UNSECURED COMMERCIAL CREDITORS, AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

*Appellees*

———————◆———————

On appeal from the United States Bankruptcy Court
for the Eastern District of Louisiana
In re: Roman Catholic Church of the Archdiocese of New Orleans
Case no. 20-10846

———————◆———————

# APPELLANT'S OPPOSITION TO THE MOTION TO DISMISS THE APPEAL

_____

Chris Edmunds,
Chris Edmunds Law Office, LLC
LBSA: 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

## <u>APPELLANTS' OPPOSITION TO MOTION TO DISMISS APPEAL</u>

Appellants oppose the Archdiocese's motion to dismiss the appeal.  Putting aside its utter noncompliance with the Federal Rules of Bankruptcy Procedure—as it far exceeds Rule 8013(f)'s 5,200-word limit—the motion is wholly frivolous.

At issue in this appeal is whether Appellants can prosecute their disability-discrimination lawsuit against the Archdiocese without running afoul of the "automatic stay" under 11 U.S.C. § 362.  Appellants will lay out the full procedural history in their opening brief.  But the gist is that the bankruptcy court concluded that the automatic applies to Appellants' lawsuit, ***despite the fact this Court held that it lacks any jurisdiction*** over the suit under 28 U.S.C. § 1334.

In other words, the bankruptcy court believes that it has broader jurisdiction than this Court.  It cited no authority for this proposition, stating instead that Appellants were "going to have to take [its] word for it."  Doc. 3-2 at 184.  But Fifth Circuit law is crystal clear that the Bankruptcy Code "does not give bankruptcy courts power beyond that granted in 28 U.S.C. § 1334."  *Matter of Walker*, 51 F.3d 562, 570 (5th Cir. 1995).  Thus, bankruptcy courts have no jurisdiction to enforce automatic stays under unless an action is "related to" a bankruptcy under 28 U.S.C. § 1334.  *See Matter of PFO Glob., Inc.*, 26 F.4th 245, 251–53 (5th Cir. 2022).

The Archdiocese now contends that *this* Court lacks jurisdiction to correct the bankruptcy court's obvious jurisdictional error.  But the Supreme Court has held that

stay-relief orders are immediately appealable because they "definitively dispose[] of discrete disputes." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. at 586. Here, the bankruptcy court concluded that "the stay absolutely does apply." Doc. 3-2 at 210. As such, it "***definitively*** dispose[d]" of this "discrete dispute" (the applicability of the automatic stay) and "***unreservedly*** … denie[d] [the] relief" that Appellants sought (a comfort order). *See Ritzen Grp., Inc.*, 140 S. Ct. at 586 (emphasis added).

The instant motion is just another stalling tactic in a long line of stalling tactics to avoid accountability for brazen discrimination against students with disabilities. In essence, the Archdiocese contends that it can threaten automatic-stay sanctions against Appellants, but this Court cannot review whether the automatic even applies in the first place. That is patently absurd, as it would allow "bankrupt businesses which operated post-petition [to] violate … [the] rights [of others] with impunity." *See Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760–61 (6th Cir. 2012).

## I.     The Archdiocese's motion exceeds Rule 8013(f)(3)'s 5,200-word limit and disregards Rule 8013(a)(3)'s time limits.

Before addressing the arguments, it must be noted that the Archdiocese has recklessly disregarded the Federal Rules of Bankruptcy Procedure. *See* Local Rule 83.4.2 ("Appeals from judgments, orders or decrees of a bankruptcy judge are governed by *Part VIII of the Bankruptcy Rules* (Section 8001, *et seq.*) ….").

Relevant here, Rule 8013 sets word limits for motions and time limits for responding to motions.  The Archdiocese's motion is noncompliant in both respects.

First, it does not comply with Rule 8013(f)(3)(A), which requires that any motions filed in a bankruptcy appeal be limited to 5,200 words and contain a certificate of compliance.  Fed. R. Bankr. P. 8013(f)(3)(A).  But the Archdiocese's motion contains no certificate of compliance.  *See id.*  However, Appellants have counted, and, excluding the exempt portions, the brief contains over **5,800 words**.  *See* doc. 5-1.  Fed. R. Bankr. P. 8013(f)(3)(A).  The motion is thus noncompliant.  *See In re Tops Holding II Corp.*, No. 22-CIV-9450 (NSR), 2023 WL 119445, at *3 (S.D.N.Y. Jan. 6, 2023) ("FRBP 8013(f)(3)(A)'s length limit governs. … Thus, Plaintiff's Opposition is non-compliant.").[1]

In addition, the Archdiocese purports to notice its motion for submission on February 1, 2023.  But Rule 8013(a)(3) governs the time for responses because this is a bankruptcy appeal, not a civil action.  *See* Local Rule 83.4.2; *see* Fed. R. Civ. P. 83 ("A local rule must be consistent with—but not duplicate—federal statutes and rules.").  Accordingly, any reply brief is due ***seven days from today***, not on February 1, 2023.  *See* Fed. R. Bankr. P. 8013(a)(3)(B) ("[T]he movant may file a reply to a response within 7 days after service of the response, but may only address matters raised in the response.").

---

[1] It is also not written in 14-point font or larger.  *See* Fed. R. Bankr. P. 8013(f)(2).

Notwithstanding these procedural deficiencies, Appellants withhold their objections, for now, and respond to the substance of the motion, in order to avoid protracted briefing on ancillary issues.  But they reserve the right to move to strike the motion if the Archdiocese's subsequent filings also fail to follow Rule 8013.  *See In re Makeen*, No. 1:21-CV-01461-DDD, 2022 WL 824416, at *10 (D. Colo. Mar. 18, 2022) ("Any future motions or briefs that exceed the applicable length limit … or that fail to include a certificate of compliance if required by Rule 8013(f)(3)(A) or (C) or Rule 8015(h) may be stricken without further notice.").  This includes following Rule 8013's word limit and time limit for reply briefs.

## II. The bankruptcy court's order is final and appealable because it concluded that the automatic stay "absolutely does apply," which "definitively disposed of a discrete dispute."

Appellants moved below for a "comfort order"—an order confirming that "the automatic stay never came into effect regarding" their suit.  *See In re Ross*, No. 18-11356, 2019 WL 480269, at *2–3 (Bankr. N.D. Miss. Feb. 6, 2019).  But the bankruptcy court denied this motion, and orders denying stay-relief motions are "final, immediately appealable decisions."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020).  That is so, because they "dispose[] of a procedural unit anterior to, and separate from, claim-resolution proceedings."  *Id.* at 586.

A bankruptcy-court order is appealable when it "definitively disposes of discrete disputes within the overarching bankruptcy case."  *Ritzen Grp., Inc.*, 140 S.

Ct. at 586.  Here, the bankruptcy court concluded that "the stay absolutely does apply."  Doc. 3-2 at 210.  As such, it "*definitively* dispose[d]" of this "discrete dispute" and "*unreservedly* … denie[d] [the] relief" that Appellants sought: a comfort order affirming the inapplicability of the automatic stay.  *See Ritzen Grp., Inc.*, 140 S. Ct. at 586 (emphasis added).

At least two circuits have held that grants or denials of comfort orders are immediately appealable, because they resolve discrete legal questions.  The Second Circuit held that the "bankruptcy court's resolution of … whether the stay applies" is immediately appealable, because it "is the equivalent of a decision from that court on a motion seeking relief from a stay."  *In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012).  And the Tenth Circuit reached the same conclusion, holding that "scope of the automatic stay constitutes a discrete dispute."  *Rajala v. Gardner*, 709 F.3d 1031, 1035 (10th Cir. 2013) (an order "deem[ing] § 362 inapplicable … was essentially an order granting relief from the automatic stay" and was thus immediately appealable).

The key question in determining finality is whether there is "reason to believe that the bankruptcy court contemplates additional proceedings as to the applicability of the stay."  *In re Quigley Co., Inc.*, 676 F.3d at 51.  Here, while bankruptcy court invited Appellants to re-urge a motion to *lift* the stay if circumstances change, there is no reason to believe that it "contemplates additional proceedings as to the

*applicability* of the stay." *See id.* (emphasis added).  By concluding that the stay "absolutely does apply," doc. 3-2 at 210, the bankruptcy court unequivocally and "conclusively resolved [Appellants'] entitlement to the requested relief," making it immediately appealable.  *See Ritzen Grp., Inc.*, 140 S. Ct. at 591.

To be sure, there were two discrete issues before the bankruptcy court, but this appeal raises only one of them.  The first was whether the automatic stay applies at all, and Appellants appeal the bankruptcy court's conclusion that it does.  The second issue was, if the stay does apply, whether there was good cause to lift it.  *See* doc. 3-2 at 12–15.  But Appellants do *not* challenge the decision not to lift the stay, because the court made clear that it was not forever foreclosing the possibility of such relief.  In other words, this appeal challenges the legal conclusion that the stay applies, not the equitable conclusion of whether good cause exists to lift the stay.

Nothing in *Ritzen Group* carved out an exception for orders labeled "without prejudice."  140 S. Ct. at 591 (explaining that "appealability should be determined for the entire category to which a claim belongs" and that "classifying as final all orders conclusively resolving stay-relief motions will avoid, rather than cause, 'delays and inefficiencies'").[2]  Here, the bankruptcy court's order states that it is

---

[2] Carving out a "without prejudice" exception would allow bankruptcy judges to insulate their stay-relief rulings from appellate review.  *See Eddleman v. U.S. Dep't of Lab.*, 923 F.2d 782, 785 (10th Cir. 1991) ("If we designate orders granting or denying relief from stay to be interlocutory orders, we render them virtually unreviewable … because the stay remains in effect only during the pendency of the bankruptcy proceedings. … Therefore, in most cases, by the time the bankruptcy case is complete the issue of the stay will be moot.").

"without prejudice," presumably because it left open the possibility of lifting the stay down the road.  And while that label might affect the appealability of its decision not to lift the (purportedly applicable) stay—a decision Appellants do not challenge here—it does not affect its unequivocal conclusion that the stay "absolutely" applies.

As explained in footnote 3 of *Ritzen Group*, an order denying stay relief is interlocutory only if the record suggests that "further developments might change the stay calculus."  *Id.* at 592 n.4.  But that is obviously not the case here, as the bankruptcy court concluded that the stay "absolutely" applies.  *Compare In re Khan*, No. 20-60032-CIV, 2021 WL 4865278, at *3 (S.D. Fla. Oct. 19, 2021) ("without prejudice" order was not appealable because "it sa[id] nothing that could be construed as an impediment to seeking or granting future stay relief"); *with In re Mayer*, 28 F.4th 67, 71 (9th Cir. 2022) (a "without prejudice" order was "final and appealable" because "the record makes clear that the court 'unreservedly denied relief'") (quoting *Ritzen Grp., Inc.*, 140 S. Ct. at 586, 592 n.4).  Because the scope of the automatic stay is a purely legal question, there are no "further developments [that] might change the stay calculus."  *Ritzen Grp., Inc.*, 140 S. Ct. at 592 n.4.

**III.    The Archdiocese waived the "bankruptcy standing" issue and, in any event, its argument is meritless.**

The Archdiocese did not challenge Appellants' prudential "standing" to seek a comfort order from the bankruptcy court.  Because it raises this issue for the first time on appeal, the issue is waived.  *See Bd. of Mississippi Levee Comm'rs v. U.S.*

8

*E.P.A.*, 674 F.3d 409, 417 (5th Cir. 2012).  Moreover, even if the Archdiocese had preserved the issue, the "bankruptcy standing" rule does not apply to stay-relief disputes, because they are separate proceedings apart from "claim-resolution proceedings."  *See Ritzen Grp., Inc.*, 140 S. Ct. at 586.  Finally, even assuming the bankruptcy-standing rule applied here, Appellants easily satisfy it, because automatic-stay violations give rise to monetary damages, and because disability discrimination increases the cost of education for children with disabilities.

## A. The Archdiocese waived the "bankruptcy standing" argument.

At no point in the bankruptcy court did the Archdiocese challenge Appellants' "bankruptcy standing" to seek relief under 11 U.S.C. § 362.  Instead, it raises this issue for the first time on appeal.  But "bankruptcy standing" is a "prudential standing requirement," not a constitutional one.  *Matter of Dean*, 18 F.4th 842, 844 (5th Cir. 2021).  And "[u]nlike constitutional standing, ***prudential standing arguments may be waived***."  *Bd. of Mississippi Levee Comm'rs*, 674 F.3d at 417 (emphasis added).  The Archdiocese therefore "forfeited" this prudential standing argument.  *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 297 (5th Cir. 2022).[3]

---

[3] *See also In re Dampier*, 722 F. App'x 855, 856 (10th Cir. 2018) ("[W]hen the challenge to standing involves a statutory ground, rather than Article III, the challenge can be forfeited. … Because the debtor's challenge rests on statutory grounds, the challenge has been forfeited.").

Bankruptcy standing is not just an appellate doctrine; it applies in the bankruptcy court, as well.  *See Matter of Technicool Sys., Inc.*, 896 F.3d 382, 384 (5th Cir. 2018) ("Both the *bankruptcy court* and the district court held that Furlough lacked standing to object.") (emphasis added).  If the Archdiocese truly believed that Appellants lack "bankruptcy standing" to challenge the applicability of the automatic stay, it should have raised that issue in the bankruptcy court.  *See In re Miller*, 307 F. App'x 785, 789 (5th Cir. 2008) (debtor waived standing challenge because he "failed to timely assert the defense in bankruptcy court.").  A court's "obligation to hear and decide cases within its jurisdiction is virtually unflagging," and the Archdiocese identifies no sound reason for this Court to overlook the waiver and consider this prudential challenge.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (internal quotation marks omitted).

## B. "Bankruptcy standing" does not apply to stay-relief proceedings.

Putting aside waiver, the Archdiocese's argument is meritless, because the "bankruptcy standing" limitation does not apply to stay-relief proceedings.  As noted, "bankruptcy standing" is merely a "prudential standing requirement." *Matter of Dean*, 18 F.4th at 844.  But courts "do not invoke this doctrine 'in instances in which the appellant was the party that brought the motion at issue on appeal." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011) (quoting *In re Sherman*, 491 F.3d 948, 957 n.8 (9th Cir. 2007)).

In *Palmdale Hills* the Ninth Circuit held that bankruptcy standing does not apply to appeals from stay-relief orders. *Id.* The debtor argued that the appellant lacked "prudential standing" to challenge "the bankruptcy court's rulings regarding the scope and application of [the] automatic stay," because the appellant did not satisfy the "person aggrieved test." *Id.* at 872–74. The Ninth Circuit rejected that argument, explaining that courts generally invoke bankruptcy standing only "when the appellant is a party other than the moving party." *Id.* at 874. Here, as in *Palmdale Hills*, Appellants were the "moving party" below. *See id.* In other words, they were "formally a party" to the stay-relief proceedings and thus "need not establish prudential appellate standing." *See In re Sherman*, 491 F.3d at 957 n.8.

More importantly, the order challenged here arises out of *stay-relief* proceedings, not "*claim-resolution* proceedings." *See Ritzen Grp., Inc.*, 140 S. Ct. at 589 (emphasis added). Bankruptcy standing does not apply to stay-relief proceedings, for the same reason that stay-relief orders are immediately appealable: because they are "separate from claim-resolution proceedings." *Id.* That is, the "[a]djudication of a stay-relief motion … occurs before and apart from proceedings on the merits of creditors' claims." *Id.* And, as separate proceedings, they do not implicate the same concerns that bankruptcy standing is designed to address, because they typically do not "involve numerous parties with conflicting and overlapping interests." *See Matter of Technicool Sys., Inc.*, 896 F.3d at 385.

Indeed, the Archdiocese does not cite a single example of bankruptcy standing being invoked in stay-relief proceedings.  To the contrary, every decision it cites involved orders related to "claim-resolution proceedings."  *See Ritzen Grp., Inc.*, 140 S. Ct. at 589.  In *Matter of Dean*, for example, the Fifth Circuit found no standing to challenge "a litigation funding agreement" between the trustee and a creditor.  18 F.4th at 845.  Likewise, *Matter of Technicool Systems, Inc.* involved a challenge to the appointment of a "special counsel" to pierce the corporate veil of companies "closely related" to the debtor.  896 F.3d at 384.  In both cases, the dispute arose out of the "overarching bankruptcy case," not a discrete "procedural unit anterior to, and separate from," the main bankruptcy case.  *See Ritzen Grp., Inc.*, 140 S. Ct. at 586.

Another quintessential example of a dispute arising out of "claim-resolution proceedings" is who gets to serve on creditor committees.  And this Honorable Court recently dismissed an appeal of an order "removing four people" from a creditors' committee.  *In re Roman Cath. Church of Archdiocese of New Orleans*, No. CV 22-1738, 2022 WL 3575287, at *2 (E.D. La. Aug. 11, 2022).  Relevant here, it concluded that "the 'more exacting' bankruptcy standing standard applie[d]" to the appeal, because "any right or interest asserted by the former members necessarily flows from the bankruptcy itself."  *Id.*  In stark contrast, Appellants' right to pursue their lawsuit against the Archdiocese flows not "from the bankruptcy itself," *see id.*,

but from Louisiana's antidiscrimination statutes.  In other words, Appellants' rights "exist[] outside of bankruptcy." *See id.*

Even assuming bankruptcy standing could ever apply to stay-relief proceedings, Congress abrogated any prudential standing concerns.  It is well established that, "unlike their constitutional counterparts, [prudential standing rules] can be modified or abrogated by Congress." *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules.").  Relevant here, the Fifth Circuit has held that 11 U.S.C. § 362 grants "standing to bring an action for stay violations." *In re Dugas*, 176 F.3d 478 (5th Cir. 1999).  It would be absurd if the Archdiocese had standing to pursue contempt proceedings for purported violations of the automatic stay, while Appellants lack standing to challenge the applicability of the stay in the first place. Instead, this court can conclude that, in enacting 11 U.S.C. § 362, Congress conferred "statutory standing" to anyone affected by the automatic stay to seek relief. *See Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 196–97 (2017).

The Archdiocese's position would also lead to absurd results.  It would turn *Ritzen Group* on its head, converting presumptively appealable orders into presumptively *un*appealable orders and requiring appellants to prove a direct, pecuniary impact. *See id.* at 591 (explaining that "the issue of appealability should

be determined for the entire category" of claims and there is "no good reason to treat stay adjudication as the relevant 'proceeding' in only a subset of cases"). Stay-relief motions often do not involve pecuniary interests. *See, e.g.*, *In re Privett*, 557 B.R. 580, 584 (S.D. Ohio 2016) (stay-relief motion that "s[ought] to depose … [a] witness"). Under the Archdiocese's theory, however, appeals from stay-relief orders would regularly devolve into battles over whether an order has a pecuniary impact.

It would also render the bankruptcy court's order a nullity. After all, if Appellants lack bankruptcy standing now, then they also lacked standing in the bankruptcy court. *See Matter of Technicool Systems, Inc.*, 896 F.3d at 384 (affirming bankruptcy court's ruling that party "lacked standing to object because he … did not have a stake in the estate"). And if they lacked standing below, then the bankruptcy court's order concluding that the automatic stay applies is a nullity and must be vacated. *See Johnson v. City of Dallas, Tex.*, 61 F.3d 442, 443 (5th Cir. 1995) (vacating district court's order because appellees were "without standing to raise their … claim").

**C. Even assuming "bankruptcy standing" applies, Appellants satisfy it.**

Even if Appellants need to show bankruptcy standing, they do so easily. The Archdiocese contends that Appellants lack a "pecuniary" interest, because their lawsuit does not seek damages. This argument fails, for two reasons.

First and foremost, Appellants have a pecuniary interest in not being sanctioned for violating the automatic stay. *See* 11 U.S.C. § 362(k). This is not a speculative injury, as the Archdiocese has already accused Appellants of violating the stay *in their motion*. Doc. 5-1 at 6–7 ("Despite the pendency of the Lift Stay Motion … Appellants, in contravention of the automatic stay, amended the Petition"). It even filed a "supplemental objection" below "detailing" what it believes to be "Appellants' disregard of the automatic stay." *Id.*

This threat could not be more "pecuniary." Unlike an order appointing a "special counsel," *Matter of Technicool Sys., Inc.*, 896 F.3d at 386, or an order removing certain creditor-committee members, *In re Archdiocese*, 2022 WL 3575287, at *2, the bankruptcy court's order places Appellants at risk of sanctions for prosecuting their suit. These sanctions include "actual damages, including costs and attorneys' fees" and even "punitive damages." 11 U.S.C. § 362(k). In other words, money.

In the creditor-committee appeal, this Court explained that the appellants "ha[d] not been sanctioned" by being removed from the committee, because they had no "legal right" to serve on the committee. *In re Archdiocese*, 2022 WL 3575287, at *2. By contrast, Appellants have suffered the "invasion of [the] legal right" to prosecute their lawsuit, and this right does not "flow[] from the bankruptcy itself." *Id.* Thus, the bankruptcy court's conclusion that the automatic stay applies

to Appellants' suit deprives them of "something they had a right to," namely, the right to pursue their lawsuit during the pendency of the bankruptcy. *See id.* at n.25.

That the Archdiocese has not yet moved for sanctions is of no moment. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 154 (1967) (holding that plaintiffs had standing to seek a "pre-enforcement review" of a regulation, because "if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions"). The Archdiocese has threatened sanctions, and that is all that matters. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."). Were it otherwise, the only way to obtain judicial review of the automatic stay's scope would be to prosecute a lawsuit and dare the debtor to initiate contempt proceedings. That is not the law. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–129 (2007) ("[W]e do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").

Second, Appellants' lawsuit *itself* implicates "pecuniary" interests. One clear-cut example of economic harm can be found in Appellants' state-court petition, which alleges that the Archdiocese intentionally filters children with disabilities into schools with "Exceptional Learners" programs." Doc. 3-2 at 25 ¶ 6; Ex. A. Despite

being less competitive,[4] these "Exceptional Learners" schools are actually *more expensive* than other Catholic schools. For example, elementary tuition at St. Therese is $10,150, while tuition at St. Catherine of Siena is between $6,771 and $7,271. *Compare* Ex. B,[5] *with* Ex. C.[6] And an even more blatant example can be found at St. Benilde School, which charges "exceptional learners" an extra "$1,500 per subject," on top of the base tuition. Ex. D.[7] This school is thus *charging* families for academic accommodations that state law requires they provide at no cost. *See* La. Rev. Stat. § 46:2256, § 51:2264. This segregated school system causes obvious economic harm to children with disabilities.

It is also common sense that the denial of educational opportunities generally leads to the denial of *economic* opportunities. *See United States v. Fordice*, 505 U.S. 717, 744 (1992) (O'Connor, J., concurring) (noting "the lost educational and career opportunities and stigmatic harms caused by discriminatory educational systems"). For example, people with disabilities are nearly three times as likely to be without work than those without disabilities.[8] And they are "more likely to experience

---

[4] At trial, Appellants will establish that students at "exceptional learner" schools are far less likely to be accepted into their first-choice high schools.

[5] https://sttheresenola.org/tuition-and-fees

[6] https://scsgators.org/tuition

[7] https://stbenilde.com/2022-2023-tuition-fees

[8] U.S. Dep't of Labor, Office of Disability Employment Policy, *Disability Employment Statistics*, available at https://www.dol.gov/agencies/odep/research-evaluation/statistics; U.S. Bureau of Labor Statistics, *Persons with a Disability: Labor Force Characteristics Summary*, (Feb. 24, 2022), available at https://www.bls.gov/news.release/disabl.nr0.htm

adverse socioeconomic outcomes such as less education, poorer health outcomes, lower levels of employment, and higher poverty rates."[9]

Indeed, the Louisiana legislature recognized that disability discrimination in education causes monetary harm, as its antidiscrimination statutes expressly provide for monetary damages. La. Rev. Stat. § 46:2256, § 51:2264. Appellants chose not to seek damages because they would be impossible to calculate in a class-action lawsuit.[10] But the decision to voluntarily forgo damages does not change the fact that they are suffering economic harm or that injunctive relief can mitigate that harm.

In short, this appeal implicates pecuniary interests, and dismissing it would effectively allow debtors who "operate[] post-petition [to] violate [children's] rights with impunity." *See Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760–61 (6th Cir. 2012). This would be a tragic result. The lawsuit alleges "direct, overt [disability] discrimination," and "court[s] should think long and hard before dismissing [such] a case for lack of 'justiciability,'" given the "badge of inequality and stigmatization" that such discrimination imposes. *Cf. Moore v. USDA on Behalf of Farmers Home Admin.*, 993 F.2d 1222, 1223–24 (5th Cir. 1993).

---

[9] The World Bank, *Disability Inclusion* (Apr. 14, 2022), available at https://www.worldbank.org/en/topic/disability#1.

[10] Unlike, say, an oil spill, where damages can be apportioned among the class based on formulas that take into account factors such as physical proximity to the spill, disability discrimination affects different people in very different ways. *Cf. Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 495 (1954) ("Because these are class actions, … and because of the great variety of local conditions, the formulation of decrees in these cases presents problems of considerable complexity.").

IV.    **The appeal is not moot, because Appellants cannot prosecute their state-court lawsuit without a comfort order confirming that the automatic stay does not apply to the suit.**

This appeal is not moot, for the simple reason that the bankruptcy court placed Appellants' lawsuit in limbo by concluding that the automatic stay applies. Without relief, Appellants cannot prosecute their suit without subjecting themselves to astronomical sanctions (i.e., paying the Archdiocese's attorney's fees incurred in defending the suit). But this Court can grant Appellants "effectual relief" through a comfort order confirming that the automatic stay does not apply. *See Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020). Thus, the appeal is not moot.

As for whether or not the underlying *lawsuit* is moot, that is a question for the Louisiana state-court judge presiding over it. This Court cannot decide whether a state-court action—over which it has no jurisdiction—is moot. Nonetheless, Appellants will briefly explain why the lawsuit itself is not moot.

First, the majority of issues in the suit remain unresolved. It is immaterial that the Archdiocese agreed to remove discriminatory questions from its application materials. Though this action partially addressed the most immediate concern (obviating the need for preliminary injunctive relief), it did not resolve any of the other myriad issues in the suit. For example, the Archdiocese's action applies only to the nine schools it directly operates. *See* doc. 3-2 at 201 ¶¶ 5–6. Appellants allege (and the Archdiocese denies) that the Archdiocese has the power to require the

dozens of other Catholic schools in the area to take the same action.  Doc. 3-2 at 84

n.3.  In addition, Appellants intend to seek injunctive relief beyond just the paper

applications, as there are other admissions processes (such as student interviews)

that can elicit disability-related information.  Not to mention the fact that the

Archdiocese "categorically denies" that it violated state law, leaving unsettled the

question of its liability and any available remedies.  Doc. 3-2 at 201 ¶ 8.

Second, even assuming there weren't so many unsettled issues, Louisiana

state courts follow the Supreme Court's "voluntary cessation" doctrine.  The

"voluntary cessation exception" provides that if a "defendant voluntarily stops

allegedly wrongful conduct, then that change alone does not make the case moot, for

the defendant would then be free to return to his old ways."  *Cat's Meow, Inc. v. City*

*of New Orleans Through Dep't of Fin.*, 98-0601 (La. 10/20/98), 720 So. 2d 1186,

1194.  Instead, the defendant bears a "heavy burden" to show that it is "absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to

recur."  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

167, 189 (2000).  Here, the Archdiocese cannot meet this "heavy burden" to show

that it is "absolutely clear" that it will not return to its old ways and resume

discriminating against children with disabilities.  *See id.*

**V.   To the extent it finds jurisdiction lacking, this Court has discretion to construe the appeal as a mandamus petition.**

If the Court concludes that jurisdictional impediments exist, it "has the discretion to treat an appeal as a petition for a writ of mandamus under the All Writs Statute." *In re Grand Jury Subpoena*, 190 F.3d 375, 389 (5th Cir. 1999).  To obtain the writ, a party must show (1) that she has a "clear and indisputable" right to the relief, (2) that she has "no other adequate means to attain" it, and (3) that issuing the writ "is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).   "These hurdles, however demanding, are not insuperable." *Id.* at 381.  All three elements are met here.

First, as will be made clear in their principal brief, Appellants have a "clear and indisputable" right to a comfort order.  *See id.*  Bankruptcy courts derive all their power from district courts and thus lack the "power to hear cases that the district court could not hear." *Matter of Walker*, 51 F.3d 562, 570 (5th Cir. 1995).  This principle is so clear and indisputable that neither the bankruptcy court nor the Archdiocese offered any caselaw to dispute it.  Instead, the bankruptcy court insisted that Appellants "take [its] word for it" that it has broader jurisdiction than this Court.

Second, Appellants have "no other adequate means to" attain a comfort order. *See Cheney*, 542 U.S. at 380–81.  Unless this Court grants relief, they will be forced to wait until the bankruptcy proceedings conclude, which will likely take several years.  That is precisely why stay-relief orders are immediately appealable.  *See*

*Eddleman*, 923 F.2d at 785 ("If we designate orders granting or denying relief from stay to be interlocutory orders, we render them virtually unreviewable.").

Third, granting the writ is "appropriate" here, because the lawsuit challenges systematic school segregation.  *See Cheney*, 542 U.S. at 380–81.  This is an issue of great public importance, as Louisiana has an inordinate number of students enrolled in private schools, most of them Catholic schools.[11]  And Appellants' suit is a class-action suit that could—if allowed to proceed—provide broad-based relief to tens of thousands of students in the area.  Being forced to sit and wait for a massive, unrelated bankruptcy to conclude would needlessly forestall systemic changes within the Catholic school system and harm children with disabilities.

January 20, 2023

   /s/ *Chris Edmunds*      

Chris Edmunds,
Counsel for Appellants
LBSA: 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

---

[11] *See* Bob Ross, *Louisiana is 3rd in Nation in private school enrollment*, The Times Picayune (May 6, 2012), available at https://www.nola.com/news/education/article_0e6cd160-84ae-5fe1-9a8f-04b3becac146.html

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that Appellants' response opposing the instant motion complies with Rule 8013(f)(3)(A) because, excluding the parts exempted under Rule 8015(g), it contains 5157 words.  Fed. R. Bankr. P. 801.


    /s/ *Chris Edmunds*

Chris Edmunds
Attorney for Appellants