No. 2:22-cv-04552-GGG-JVM
(On appeal from Bankruptcy Case No. 20-10846)

---

## *United States District Court for the Eastern District of Louisiana*

---

MINOR CHILDREN,

*Appellants*

v.

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,
OFFICIAL COMMITTEE OF UNSECURED COMMERCIAL CREDITORS, AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

*Appellees*

———————◆———————

On appeal from the United States Bankruptcy Court
for the Eastern District of Louisiana
In re: Roman Catholic Church of the Archdiocese of New Orleans
Case no. 20-10846

———————◆———————

# OPENING BRIEF OF APPELLANT

———————————

Chris Edmunds,
Chris Edmunds Law Office, LLC
LBSA: 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................3

STATEMENT REGARDING ORAL ARGUMENT ...............................5

JURISDICTIONAL STATEMENT ..........................................................6

ISSUES PRESENTED FOR REVIEW .....................................................7

STATEMENT OF THE CASE .................................................................9

SUMMARY OF THE ARGUMENT .....................................................16

ARGUMENT ........................................................................................18

   I.   Because this Court lacks "related to" jurisdiction under 28 U.S.C. § 1334, the bankruptcy court necessarily lacks jurisdiction. ...........................................19

      A.   The text is plain: the automatic stay does not apply to actions that are not "related to" a bankruptcy. ..............................................20

      B.   Fifth Circuit caselaw is clear that bankruptcy courts cannot enjoin suits that are not "related to" a bankruptcy under 28 U.S.C. § 1334(b). .................22

   II.   Even assuming 11 U.S.C. § 362 confers jurisdiction beyond 28 U.S.C. § 1334, the automatic stay does not apply to post-petition claims. ....................27

   III.   The automatic stay does not apply because Appellants' suit seeks only injunctive relief and does not seek control over "property of the estate." ...........30

   IV.   The Court has jurisdiction over this appeal. ...............................34

CONCLUSION ......................................................................................38

CERTIFICATE OF COMPLIANCE .......................................................39

## TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967)..............................................37

*Amplifier Rsch. Corp. v. Hart*, 144 B.R. 693 (E.D. Pa. 1992).....................32, 33

*Arnold v. Garlock Inc.*, 288 F.3d 234 (5th Cir. 2002) ........................................31

*Bd. of Mississippi Levee Comm'rs v. U.S. E.P.A.*, 674 F.3d 409 (5th Cir. 2012)..............37

*Borman v. Raymark Indus., Inc.*, 946 F.2d 1031 (3d Cir. 1991) .......................25

*Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009) ..............................................25

*Browning v. Navarro*, 743 F.2d 1069 (5th Cir. 1984) ........................................27

*Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008)...........7, 17, 27

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)..............................................29

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ...............................................21

*Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012) .............8, 18, 32

*Driggs v. Winters*, No. 3:05cv48BN, 2005 WL 8172231 (S.D. Miss. Feb. 18, 2005) ......32

*Ernewayn v. Home Depot U.S.A., Inc.*, 727 F.3d 369 (5th Cir. 2013) ...............................7

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985)............17, 24, 27

*In re Bass*, 171 F.3d 1016 (5th Cir. 1999) ................................................ passim

*In re Colorado Altitude Training LLC*, No. 10-21951-EEB, 2012 WL 993530 (Bankr. D. Colo. Mar. 23, 2012).................................................................32

*In re Davis*, 730 F.2d 176 (5th Cir. 1984) .......................................................19

*In re Hill,* 364 B.R. 826 (Bankr. M.D. Fla. 2007) .........................................6, 19

*In re Mayer*, 28 F.4th 67 (9th Cir. 2022) .........................................................35

*In re Nat. Century Fin. Enterprises, Inc.*, 423 F.3d 567 (6th Cir. 2005)...........................24

*In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012) .........................................34

*In re Ross*, No. 18-11356, 2019 WL 480269 (Bankr. N.D. Miss. Feb. 6, 2019)...........6, 18

*In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299 (5th Cir. 2013) ............................35

*In the Matter of Regina Nachael Howell Foster*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023).................................................................24

*Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56 (D.N.J. 2000) ................................................32

*Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994) .......................................28

*Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175 (5th Cir. 1986) ........25, 27, 33

*Matter of Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990) ........................................................22

*Matter of Karcredit, LLC*, No. 21-30649, 2022 WL 4103265 (5th Cir. Sept. 7, 2022) ....35

*Matter of Lieb*, 915 F.2d 180 (5th Cir. 1990) ....................................................................35

*Matter of PFO Glob., Inc.*, 26 F.4th 245 (5th Cir. 2022) ......................................... passim

*Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) ........................8, 17, 26, 30

*Matter of Swate*, 99 F.3d 1282 (5th Cir. 1996) ................................................17, 18, 29, 31

*Matter of Technicool Sys., Inc.*, 896 F.3d 382 (5th Cir. 2018) ..........................................36

*Matter of Walker*, 51 F.3d 562 (5th Cir. 1995) ......................................................... passim

*Matter of Wood*, 825 F.2d 90 (5th Cir. 1987) ..............................................................22, 30

*Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) .........................................19, 22, 25, 26

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) ...............................................37

*Montana v. United States*, 440 U.S. 147 (1979) ...............................................................28

*New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans*
    *Archdiocesan Cemeteries*, -- F.4th --, 2023 WL 117607 (5th Cir. 2023) .....................34

*Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990) ...................................31

*Rajala v. Gardner*, 709 F.3d 1031 (10th Cir. 2013) ..........................................................34

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) .....................................................21

*Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816 (5th Cir. 2003)....19, 20

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020) ........................6, 35, 36

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).................................................37

*Tufts v. Hay*, 977 F.3d 1204 (11th Cir. 2020) .....................................................................6

*United States v. ILCO, Inc.*, 48 B.R. 1016 (N.D. Ala. 1985) ............................................33

*United States v. Inslaw, Inc.*, 932 F.2d 1467 (D.C. Cir. 1991).........................................25

*Whitman v. Am. Trucking Associations*, 531 U.S. 457 (2001) ..........................................22

*You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-JDW-EAJ, 2012 WL
    12905185 (M.D. Fla. Oct. 24, 2012) ...............................................................................32

**Statutes**

11 U.S.C. § 105................................................................................6, 26

11 U.S.C. § 362................................................................................ passim

28 U.S.C. § 1334................................................................7, 17, 20, 22

28 U.S.C. § 157................................................................................20

Fed. R. Bankr. P. 8002................................................................6

Fed. R. Bankr. P. 8003................................................................6

Fed. R. Evid. 201(b) ................................................................37

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary.  *See* Fed. R. Bankr. P. 8019(a).  There is a general presumption under the Federal Rules of Bankruptcy that "[o]ral argument must be allowed in every" appeal.  *Id.* at 8019(b).  But the Court may dispense with oral argument if "the dispositive issue or issues have been authoritatively decided" or if "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."  *Id.* As explained below, the issues in this case have been "authoritatively decided" by the Fifth Circuit, so the Court will "not be significantly aided by oral argument." *See id.*  With that said, Appellants are not opposed to oral argument.

## JURISDICTIONAL STATEMENT

A "comfort order" affirms that the "automatic stay" under 11 U.S.C. § 362 "never came into effect" regarding a specific claim. *In re Ross*, No. 18-11356, 2019 WL 480269, at *2–3 (Bankr. N.D. Miss. Feb. 6, 2019); *see also Tufts v. Hay*, 977 F.3d 1204, 1207 n.1 (11th Cir. 2020) ("A bankruptcy court issues a comfort order to confirm that the automatic stay in bankruptcy does not apply. …").  Bankruptcy courts have jurisdiction to issue comfort orders Section 105, which gives them authority "to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *In re Hill,* 364 B.R. 826, 827 (Bankr. M.D. Fla. 2007) (quoting 11 U.S.C. § 105(a)). Here, the bankruptcy court formally denied the motion for a comfort order on November 2, 2022, and Appellants timely appealed this decision on November 15, 2022.  Doc. 3-2 at 212–15; Fed. R. Bankr. P. 8002(a).

This Court has appellate jurisdiction over final decisions of the bankruptcy court.   Fed. R. Bankr. P. 8003.   Because the bankruptcy court "unreservedly" concluded that the automatic stay applies to Appellants' lawsuit, its decision to deny Appellants' motion for a comfort order is a "final, appealable order."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC,* 140 S. Ct. 582, 586 (2020) (holding that a "bankruptcy court's order ruling on a stay-relief motion disposes of a procedural unit anterior to, and separate from, claim-resolution proceedings").  And, this Court, like

the bankruptcy court, "ha[s] jurisdiction to determine [its] own jurisdiction." *Ernewayn v. Home Depot U.S.A., Inc.*, 727 F.3d 369, 370 (5th Cir. 2013).

## ISSUES PRESENTED FOR REVIEW

1. Bankruptcy courts lack the "power to hear cases that the district court could not hear." *Matter of Walker*, 51 F.3d 562, 570 (5th Cir. 1995). Here, the district court ruled that it lacks jurisdiction over a suit under 28 U.S.C. § 1334, because it is not conceivably "related to" the bankruptcy case. Despite this ruling, the bankruptcy court purported to exercise jurisdiction under 11 U.S.C. § 362 to enforce the automatic stay against the same lawsuit. ***Did the bankruptcy court err when it concluded that it has jurisdiction that the district court lacks?***

2. Even assuming 11 U.S.C. § 362 grants bankruptcy courts jurisdiction over suits that district courts cannot hear under 28 U.S.C. § 1334, the automatic stay "does not apply to claims that arise post-petition." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008). This Court has already concluded that Appellants' suit complains about only "current conduct" and does not seek "recompense for prior transgressions." ***Did the bankruptcy court err by concluding that a suit based on purely "post-petition" conduct is subject to the automatic stay?***

3. Even if an action implicates some pre-petition conduct, the automatic stay applies only to efforts to "exercise control over the property of the debtor."

*Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987).  It does not

apply to injunctive relief seeking to prevent "tortious uses" of estate property.

*Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760–61 (6th Cir. 2012).

This Court held that Appellants' suit will not affect "estate property," as it

merely seeks "to stop … alleged discrimination going forward."  ***Did the***

***bankruptcy court err in concluding that the automatic stay applies to a suit for***

***injunctive relief that does not seek to exercise control over estate property?***

## STATEMENT OF THE CASE

This Court is already familiar with Appellants' underlying lawsuit: it remanded the suit to state court because it has no conceivable relationship to the Archdiocese's bankruptcy. Doc. 3-2 at 89–92. But the bankruptcy court concluded that it has powers above and beyond those of this Court. It cited no legal authority for this proposition, stating simply that Appellants were "going to have to take [its] word for it." Doc. 3-2 at 184. Appellants appeal this decision so that they may continue to prosecute their lawsuit. The full procedural history is outlined below.

**A. Appellants file suit in state court based on the Archdiocese's discriminatory questions in its admissions applications, and the Archdiocese removes the suit to this Court.**

Appellants are school-age children with disabilities in the New Orleans area whose parents wish for them to attend Catholic schools. Doc. 3-2 at 25–31. The Archdiocese of New Orleans is a debtor in possession of a bankruptcy estate created in May 2020. It directly controls nine schools in the New Orleans area, including Archbishop Rummel and Archbishop Chappelle, and it indirectly controls dozens of other schools in its territory. Doc. 3-2 at 84. When applying for admission, Appellants discovered that many local Catholic schools' applications ask prospective students about their disabilities, in plain violation of Louisiana law. *See* La. Rev. Stat. § 46:2254. Appellants demanded the removal of these questions, but

the Archdiocese refused.  Doc. 3-4 at 126–27.  As a result, Appellants filed a class-action lawsuit in state court on August 15, 2022.  Doc. 3-2 at 25.

Two weeks later, Appellants again pursued settlement, conveying an openness to a consent decree that prohibits Catholic schools from inquiring about disabilities. Doc. 3-2 at 37.  But if an agreement could not reached, Appellants explained, they would move for a preliminary injunction to block Catholic schools from mailing out applications with these questions.  *Id.*  The Archdiocese did not respond to this email. Instead, in a flagrant attempt to stymie such relief, it removed the lawsuit to this Court just one day later.  Doc. 3-2 at 19–23.  Appellants promptly filed a motion to remand, arguing that this Court lacks jurisdiction, because the suit is not "related to" the bankruptcy under 28 U.S.C. § 1334(b).  Doc. 3-4 at 166–75.

## B. While the motion to remand to state court was pending, Appellants move the bankruptcy court for a "comfort order" to confirm that the automatic stay does not apply to their suit.

Upon removing to federal court, the Archdiocese threatened Appellants with sanctions if they tried to prosecute their suit, claiming it was automatically stayed under 11 U.S.C. § 362.  Doc. 3-4 at 127–28.  Appellants were certain that the automatic stay does not apply.  But out of an abundance of caution,[1] they filed a motion with the bankruptcy court, asking for a "comfort order" to confirm that 11

---

[1] A party who violates the automatic stay can be held liable for damages, including costs and attorney's fees.  11 U.S.C. § 362(k).

U.S.C. § 362 is inapplicable. Doc. 3-2 at 7–16. Specifically, Appellants argued that the automatic stay does not apply to post-petition claims or claims seeking purely injunctive relief that do not affect "property of the estate." *Id.* They also argued that, even if applicable, there was good cause to lift the stay. *Id.*

Appellants filed the comfort-order motion on September 13, but the court set the hearing for October 17, which would not have allowed nearly enough time to seek and obtain preliminary injunctive relief before November 9. Doc. 3-4 at 10–12. Because of the urgent need to enjoin the Archdiocese from mailing out discriminatory application materials, Appellants sought to expedite the motion, which resulted in extensive briefing with no relevance to this appeal.[2] Ultimately, the bankruptcy court declined to rule on Appellants' request until October 17, 2022.

## C. This Court grants the motion to remand, finding no jurisdiction.

On October 3, 2022, the same day the bankruptcy court denied the motion for *ex parte* relief, this Court granted Appellants' motion to remand. The Court concluded that Appellants' suit is not "related to" the Archdiocese's bankruptcy,

---

[2] Instead of exercising their statutory right to seek relief *ex parte*, Appellants sought only to expedite the motion, so that any opposing parties could be heard. *See* Fed. R. Bankr. P. 4001(a). But the Archdiocese and the Unsecured Commercial Creditors Committee objected to an expedited hearing, and the court denied the motion to expedite without explanation. Doc. 3-4 at 117. Because the objecting parties refused to consent to *any* hearing date before October 17, Appellants requested an *ex parte* order under Rule 4001(a)(2). Doc. 3-4 at 119–24. On October 3, the bankruptcy court denied the motion, claiming that it did "not address the prerequisites for obtaining injunctive relief," doc. 3-4 at 231, even though the preliminary-injunction motion would have been directed to the state-court judge, not the bankruptcy judge.

because it cannot conceivably affect the estate.  Doc. 3-2 at 89–92.  Particularly relevant here, the Court rejected two of the Archdiocese's arguments.

First, it rejected the contention that Appellants' suit "is subject to the automatic stay," because it seeks to enjoin "the Archdiocese's admissions applications."  Doc. 3-2 at 106 (quoting 11 U.S.C. § 362(a)(3) and arguing that the suit "constitutes an 'act . . . to exercise control over property of the estate'").  The Court explained that, even if the injunction is granted, the admissions applications "will remain as part of the estate's property."  Doc. 3-2 at 92.  Second, it rejected the argument that Appellants' suit "implicates, at least in part, pre-petition conduct." Doc. 3-2 at 99.  Instead, the Court explained, the suit "seek[s] prospective injunctive relief for [the Archdiocese's] *current conduct*" and does not "pursu[e] recompense for prior transgressions."  Doc. 3-2 at 92 (emphasis added).

### D. The bankruptcy court treats this Court's remand order as irrelevant and purports to exercise jurisdiction over the suit under 11 U.S.C. § 362.

In light of this Court's October 3 order granting the motion to remand on jurisdictional grounds, Appellants assumed that the objecting parties would withdraw their objection to the motion for a comfort order.  After all, how can the bankruptcy court have jurisdiction if the district court does not?  But the Archdiocese and the Unsecured Creditors Committee plowed forward and filed opposition briefs on October 11, 2022.  Doc. 3-2 at 55–80.  Tellingly, the Archdiocese dedicated less

than one page to explaining how a bankruptcy court can have jurisdiction over a case if the district court does not.  Doc. 3-2 at 60.[3]

Even worse, the Archdiocese tried to relitigate the *exact same* arguments that this Court had rejected the week before, essentially asking the bankruptcy judge to ignore this Court's rulings.  For example, it argued that the automatic stay applies because its "admissions applications … constitute property of the estate," Doc. 3-2 at 64, even though this Court had already expressly rejected this *precise argument* in its remand order, doc. 3-2 at 92 (concluding that the suit "will have no effect on the applications" which "will remain as part of the estate's property").  Likewise, the Archdiocese argued that "the admissions questions that [Appellants] seek to enjoin were drafted pre-petition," doc. 3-2 at 61, another argument that this Court had already squarely rejected, doc. 3-2 at 90 (rejecting the argument that the suit "conceivably challenges conduct that occurred prior to the bankruptcy proceeding").[4]

---

[3] The Archdiocese cited only two cases, but both involved remands on grounds of abstention, not jurisdiction.  *See* doc. 3-2 at 82.  Meanwhile, the Unsecured Creditors Committee did not even acknowledge the existence of this Court's remand order.  *See* doc. 3-2 at 74–80.

[4] This Court should take a hard look at the wasteful spending practices of the law firm representing the debtor.  Despite its obligation to protect the estate's assets, this firm has already siphoned nearly $10,000,000 (and counting) from the estate in just 2.5 years.  *See* Case No. 20-10846, docs. 682, 826, 1115, 1197, 1355, 1741, and 1987.  This same firm also billed over $350,000 of time to investigate the source of a news report about a priest that allegedly abused children.  Doc. 1844.  With its overly aggressive tactics and exorbitant fees, the firm has drastically reduced the amount that will be available to sexual abuse victims, and this Court has the authority to appoint a more fiscally responsible firm.  *See* 11 U.S.C. §§ 324–30.  The Court also has discretion to impose sanctions for such vexatious conduct.  28 U.S.C. § 1927.

Appellants filed a reply brief on October 12, 2022, relying largely on this Court's October 3 remand order.  They explained that the automatic stay could not sensibly apply to a lawsuit over which the district court has no subject matter jurisdiction.  Doc. 3-2 at 81–87.  And their reply brief cited *Matter of Walker*, 51 F.3d 562, 570 (5th Cir. 1995), which held that the automatic stay did not apply to a lawsuit that was not "related to" a bankruptcy under 28 U.S.C. § 1334.

The bankruptcy court held a hearing on the motion on October 17.  But it quickly became clear at the hearing that the court had not reviewed Appellants' reply brief or *Walker*, as it described the jurisdictional argument as "unorthodox" and "not one that [it] was expecting today as [it] was preparing for this."  Doc. 3-2 at 184.  Likewise, it asked numerous questions about potential pre-petition conduct, doc. 3-2 at 185–86, even though this Court had already decided that the suit does not "pursu[e] recompense for prior transgressions," doc. 3-2 at 90–92.

Ultimately, the bankruptcy court concluded that Appellants cannot litigate their state-court lawsuit without running afoul of the automatic stay.  It cited no legal authority to support its jurisdiction over a lawsuit that the district court remanded on jurisdictional grounds.  Instead, the court stated that "you're going to have to take my word for it."  Doc. 3-2 at 184.

As to whether there was cause to lift the automatic stay, the bankruptcy court described this as "up for debate," explaining that it was "sensitive to the fact that the

applications [we]re getting ready to go out" with discriminatory questions.  Doc. 3-2 at 188.  But given the Archdiocese's apparent plan to remove certain questions,[5] it directed the parties to "work together" to find a solution and continued the hearing until October 25.  Doc. 3-2 at 197.  Appellants then conferred with the Archdiocese, which submitted a declaration from its superintendent of Catholic education certifying that its schools would cease asking prospective students about their disabilities in application materials.  Doc. 3-2 at 200–03.  The Superintendent also swore that she would recommend that non-Archdiocesan Catholic schools do the same.  Doc. 3-2 at 200–03.  In light of these concessions, and to avoid burdensome emergency litigation, Appellants notified the court that they would no longer be seeking preliminary injunctive relief.  Doc. 3-2 at 199.  On November 2, the bankruptcy court issued an order formally denying Appellants' motion without prejudice.  Doc. 3-2 at 212.

Appellants now appeal to "obtain[] a cloak of cover from the court," so that they can prosecute their case without fear of "potential ramifications of acting in violation of the automatic stay."  *See In re Ermi,* No. 06–60167, 2006 WL 2457144, at *2 (Bankr. N.D. Ohio Aug. 3, 2006).  Although the most immediate concern has been addressed (obviating the need for preliminary injunctive relief), various aspects

---

[5] In its opposition brief, the Archdiocese claimed, without any affidavits or other evidence, that it had removed the discriminatory questions from the applications of schools it controls.  *See* Doc. 3-2 at 72, 83.

of the case remain unsettled.  For example, the Archdiocese's action applies only to the nine schools it directly operates.  *See* doc. 3-2 at 201 ¶¶ 5–6.  Appellants allege (and the Archdiocese denies) that the Archdiocese has the power to require the dozens of other Catholic schools in the area to take the same action.  Doc. 3-2 at 84 n.3.  In addition, the Archdiocese "categorically denies" that it violated state law, leaving unsettled the question of its liability and any available remedies.  Doc. 3-2 at 201 ¶ 8.  Appellants also intend to seek injunctive relief beyond just the paper applications, as there are other admissions processes (such as student interviews) that can elicit disability-related information.  With no end in sight to the bankruptcy case, Appellants require a comfort order to pursue their lawsuit.

## SUMMARY OF THE ARGUMENT

The threshold question presented here is straightforward: when a district court has concluded that a lawsuit falls outside its jurisdiction under 28 U.S.C. § 1334, can the "automatic stay" under 11 U.S.C. § 362 apply to that lawsuit?  The answer is equally straightforward: of course not, because the Bankruptcy Code "does not give bankruptcy courts power beyond that granted in 28 U.S.C. § 1334."  *Matter of Walker*, 51 F.3d 562, 570 (5th Cir. 1995).  Here, the bankruptcy court concluded that 11 U.S.C. § 362 gives it some sort of free-floating jurisdiction over Appellants' lawsuit, even though the district court lacks jurisdiction.  But Fifth Circuit precedent is clear that, for the automatic stay to "prevent … state law claims in state court," a

bankruptcy court must possess jurisdiction over the action under 28 U.S.C. § 1334(b). *Matter of PFO Global, Inc.*, 26 F.4th 245, 252–53 (5th Cir. 2022). That is, the action must "conceivably affect [the debtor's] estate." *Id.* In essence, the bankruptcy court concluded that its automatic-stay jurisdiction is broader than its "related to" jurisdiction, but that is backwards. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 994–96 (5th Cir. 1985) (holding that the automatic stay did not apply to a suit, even though it was "related to" a bankruptcy under 28 U.S.C. § 1334(b)).

Even assuming bankruptcy courts possessed some ethereal jurisdiction beyond that of district courts, the bankruptcy court still erred, because the automatic stay "does not apply to claims that arise post-petition." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008). This Court concluded in its remand order that Appellants' suit complains about "current conduct," not "prior transgressions." Doc. 3-2 at 92. And the doctrine of collateral estoppel prevents the re-adjudication of this ruling. *Matter of Swate*, 99 F.3d 1282, 1289 (5th Cir. 1996).

Finally, even if the suit had any connection to pre-petition conduct, the automatic stay still does not apply, because the suit seeks only injunctive relief and does not "seek[] to obtain or exercise control over the property of the debtor." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987). Indeed, this Court said so in its remand order, holding that "the admission applications will

remain as part of the estate's property."  Doc. 3-2 at 92.  Again, collateral estoppel prevents the bankruptcy court from questioning the wisdom of that decision.  *Matter of Swate*, 99 F.3d at 1289.  But the bankruptcy court did just that, effectively concluding that the automatic stay protects even "tortious uses" of estate property. *See Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760–61 (6th Cir. 2012).

## ARGUMENT

The bankruptcy court has no jurisdiction over Appellants' lawsuit for the simple reason that *this* Court lacks jurisdiction over Appellants' lawsuit.  *Matter of Walker*, 51 F.3d 562, 570 (5th Cir. 1995) (bankruptcy courts lack the "power to hear cases that the district court could not hear"); *Matter of PFO Glob., Inc.*, 26 F.4th 245, 251–53 (5th Cir. 2022) (holding that bankruptcy court *did* have jurisdiction to enforce automatic stay because claims *were* "related to the bankruptcy estate" under 28 U.S.C. § 1334(b)).  Even assuming 11 U.S.C. § 362 implicitly granted bankruptcy courts some sort of free-standing jurisdiction that district courts do not enjoy, the bankruptcy court still erred, because this Court has held that Appellants' suit complains about only post-petition conduct.  And the bankruptcy court—which derives all its power from this Court—cannot second-guess this conclusion.

Because the automatic stay does not apply, Appellants are entitled to a "comfort order" to confirm that "the automatic stay never came into effect regarding" their suit.  *See In re Ross*, 2019 WL 480269, at *2–3.  Comfort orders

"merely identify and reiterate what has already occurred by operation of law," and they "are entered primarily for a third party's benefit, often to help a sister state court attempting to determine whether it can proceed with a pending action." *In re Hill*, 364 B.R. at 828. Without a comfort order, Appellants will be stuck between a rock and a hard place, forced to either forgo their lawsuit indefinitely or pursue their lawsuit under the threat of astronomical sanctions. "This Court reviews the scope of an automatic stay *de novo*." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003).

## I.   Because this Court lacks "related to" jurisdiction under 28 U.S.C. § 1334, the bankruptcy court necessarily lacks jurisdiction.

Before bankruptcy courts can "enjoin litigants from pursuing actions pending in other courts," they must ensure that "jurisdiction is established." *In re Davis*, 730 F.2d 176, 183–84 (5th Cir. 1984). In doing so, they "must be particularly careful in ascertaining the source of their power." *Matter of Zale Corp.*, 62 F.3d 746, 755 (5th Cir. 1995) (quoting *Matter of Kubly*, 818 F.2d 643, 645 (7th Cir. 1987)). Here, the bankruptcy court blithely dismissed any jurisdictional concerns, insisting that Appellants would have to "take [its] word for it" that bankruptcy courts have jurisdiction to enforce automatic stays against lawsuits that are not "related to" the bankruptcy estate under 28 U.S.C. § 1334(b). Doc. 3-2 at 184. This Court does not take the bankruptcy court's "word for it," because the scope of an automatic stay is a question of law that it reviews de novo. *Reliant Energy Servs., Inc.*, 349 F.3d at

825.  Instead, it can take the word of the Fifth Circuit, which has held on multiple occasions that the automatic stay does not apply to disputes lacking "related to" jurisdiction under 28 U.S.C. § 1334(b).  *Matter of Walker*, 51 F.3d at 570; *Matter of PFO Glob. Inc.*, 26 F.4th at 252–53.

### A. The text is plain: the automatic stay does not apply to actions that are not "related to" a bankruptcy.

Before turning to the caselaw, Appellants start with the statutory text.  Section 1334(b) gives district courts "original but not exclusive jurisdiction of all civil proceedings" that "aris[e] in" or are "related to cases under title 11."  28 U.S.C. § 1334(b).  A separate provision, Section, 157, allows district courts to "refer[]" cases under Section 1334 to the district's bankruptcy judges.  28 U.S.C. § 157(a).[6] Accordingly, though district courts are free to assign bankruptcy cases (and related cases) to bankruptcy courts, all jurisdictional power is vested in the district courts.

"To determine whether [bankruptcy] jurisdiction exists, 'it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.'"  *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting *Matter of Walker*, 51 F.3d at 569). Federal courts are courts of limited jurisdiction, and "[a] bankruptcy court's jurisdiction is even more circumscribed," as it is "wholly 'grounded in and limited

---

[6] In particular, Section 157 gives bankruptcy courts the authority to "hear and determine all cases … arising in a [bankruptcy] case under title 11," known as "core proceedings," and to "submit proposed findings of fact and conclusions of law to the district court" in cases merely "related to" a bankruptcy, known as "non-core proceedings."  28 U.S.C. § 157(b), (c).

by'" 28 U.S.C. § 1334. *Id.* (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Thus, if the district court lacks jurisdiction over a dispute under Section 1334, then the bankruptcy court necessarily lacks jurisdiction. *See id.* at 1025 ("We have never held that § 157 confers jurisdiction separate and apart from that existing under § 1334.").

In direct contravention of these principles, the bankruptcy court conjured a jurisdictional universe in which it enjoys jurisdiction beyond that of this Court:

> [T]here's a difference between whether a federal court has jurisdiction and can hear and decide the matter versus whether an automatic stay applies. ***The automatic stay doesn't just apply to, to cases where federal courts have jurisdiction.*** It applies across the board to any court in this country, regardless of whether this Court or the district court can hear and decide it on a final basis. … ***So again, you're going to have to take my word for it*** that the ability of this Court or the district court to hear and make a final determination in your class action suit is completely a different issue from whether this Court has   jurisdiction to determine whether an automatic stay applies.

Doc. 3-2 at 155, 184 (emphasis added). Thus, the bankruptcy court concluded that, through 11 U.S.C. § 362, Congress conferred upon it powers that this Court lacks.

But the text of Section 362 contains no jurisdictional grant. It does not "speak in jurisdictional terms or in any way refer to the jurisdiction of" the bankruptcy courts. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 162 (2010). It merely identifies the circumstances under which the automatic stay applies and the procedures for obtaining relief. *See* 11 U.S.C. § 362. If Congress wanted bankruptcy judges—who are not appointed by the President—to possess jurisdiction that district

courts lack, surely it would have said so in clear and unmistakable terms.  *See Matter of Hipp, Inc.*, 895 F.2d 1503, 1519 (5th Cir. 1990) (holding that, as "non-Article III" entities, bankruptcy courts lack jurisdiction to preside over criminal contempt proceedings).   After all, Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001).

Even assuming 11 U.S.C. § 362 contains some implicit jurisdictional grant, its scope is more limited than—and indeed, subsumed by—the district court's "related to" jurisdiction under 28 U.S.C. § 1334(b).  It sets forth that the automatic stay applies only to actions to collect pre-petition debts and/or to control "property of the estate."  11 U.S.C. § 362.  But any action that seeks to collect pre-petition debt or control property of the estate is *necessarily* "related to" the bankruptcy case under 28 U.S.C. § 1334(b), because it "could have a conceivable effect on the[] bankruptcy."  *See Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987).  This is a straightforward proposition.  And the corollary is equally straightforward: if a case is *not* "related to" a bankruptcy, then it is necessarily *not* covered by the automatic stay.  *See Matter of Zale Corp.*, 62 F.3d at 752 ("[T]he bankruptcy court has no jurisdiction over a matter that does not affect the debtor.").

**B. Fifth Circuit caselaw is clear that bankruptcy courts cannot enjoin suits that are not "related to" a bankruptcy under 28 U.S.C. § 1334(b).**

If the text were not clear enough, the Fifth Circuit has conclusively resolved this issue.  In *Matter of Walker*, the bankruptcy court imposed sanctions against a

third-party defendant for violating the automatic stay. 51 F.3d at 563. The district court then reversed the sanctions award against the third-party defendant because "neither it nor the bankruptcy court had subject matter jurisdiction" over the creditor's claims against the third-party defendant. *Id.* On appeal, the Fifth Circuit affirmed the district court, rejecting the argument that Section 157 "gave the bankruptcy court jurisdiction over" the creditor's third-party demand and, with it, the right to pursue sanctions for violating the automatic stay. *Id.* at 569.

The court explained that "Section 157 does not give bankruptcy courts power beyond that granted in 28 U.S.C. § 1334." *Id.* "[R]ather, [it merely] allows district courts to assign cases to the bankruptcy courts." *Id.* It also rejected the argument that the bankruptcy court had "supplemental jurisdiction" over the claims. *See id.* at 570–73; *see also In re Bass*, 171 F.3d at 1023 (rejecting the notion that the bankruptcy court has any "inherent" jurisdiction). In plain English, *Walker* held that there was no jurisdiction to impose automatic-stay sanctions against a third-party defendant, because the claims against the third-party defendant could not conceivably affect the estate. 51 F.3d at 563–70.

The Fifth Circuit reinforced this principle just last year in *Matter of PFO Global, Inc.*, 26 F.4th at 252–53, which considered "whether the bankruptcy court had jurisdiction to prevent [a creditor] from asserting state law claims in state court"—i.e., to enforce the automatic stay under 11 U.S.C. § 362. The court

explained that the automatic stay could not apply unless the claims are "related to" the bankruptcy case. *Id.* Ultimately, it concluded that the bankruptcy court did have "related to" jurisdiction to enforce the stay because the outcome of the claims "could conceivably affect PFO's estate." *Id.* In stark contrast, it is undisputed that Appellants' suit is not "related to" the bankruptcy. *See id.*; *see also In the Matter of Regina Nachael Howell Foster*, No. 22-10310, 2023 WL 20872, at *2 (5th Cir. Jan. 3, 2023) ("Foster does not appear to dispute that this case is at least 'related to' bankruptcy. … Thus, the bankruptcy court had subject matter jurisdiction.").

Critically, the Fifth Circuit has held that "related to" jurisdiction is broader than the automatic stay. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985). In *Holland American Insurance*, the court held that a "district court … ha[d] federal bankruptcy jurisdiction" over a fire-based insurance suit, but that the automatic stay did not apply, because the "fire … did not occur until after the date of [the debtor's] Chapter 11 petition." *Id.* at 994–96. But the reverse cannot be true: the automatic stay cannot apply to a lawsuit that has no conceivable effect on the bankruptcy. *See id.*; *see also In re Nat. Century Fin. Enterprises, Inc.*, 423 F.3d 567, 574 (6th Cir. 2005) (noting that a "motion to enforce the automatic stay by definition met a narrower jurisdictional test than the 'related to' basis for jurisdiction over non-core proceedings"); *Borman v. Raymark Indus., Inc.*, 946 F.2d

1031, 1036 (3d Cir. 1991) (noting that "the automatic stay does not encompass every action that is 'related to' bankruptcy").

This is basic common sense.  The automatic stay is designed "to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets."  *Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986).  In essence, it "solve[s] a collective action problem—to make sure that creditors do not destroy the bankrupt estate in their scramble for relief."  *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C. Cir. 1991).  In finding no "related to" jurisdiction over Appellants' suit, this Court determined that the suit does not "in any way impact[] upon the handling and administration of the bankruptcy estate."  *See In re Bass*, 171 F.3d at 1022.  It would be absurd to conclude that the automatic stay—which is designed to protect estate assets—applies to a suit with no impact on estate assets.  *See id.*; *see also Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009) (noting that the automatic stay cannot apply to a suit that is "unrelated to any of the [debtor's] debts").

Also relevant is *Matter of Zale*, 62 F.3d at 751.  There, the Fifth Circuit considered the authority of bankruptcy courts under Section 105 to affirmatively stay litigation that is not automatically stayed under 11 U.S.C. § 362.  Even when proceedings are not automatically stayed by operation of law under 11 U.S.C. § 362, a bankruptcy court "may affirmatively stay proceedings pursuant to its broad

discretionary powers embodied in 11 U.S.C. § 105." *Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1146 n.3.   The bankruptcy court in *Matter of Zale* purported, under Section 105, to approve a settlement that enjoined suits between non-debtors.   62 F.3d at 751.   But the Fifth Circuit held that the bankruptcy court exceeded its authority because it lacked "related to" jurisdiction over those suits, and Section 105 grants no injunctive authority over such suits.   *Id.* at 755–57.



"Related to" jurisdiction under 28 U.S.C. § 1334
(discretionary stay under 11 U.S.C. § 105)

Automatic stay under 11
U.S.C. § 362

*Matter of Zale* stands for the proposition that, when 11 U.S.C. § 362 does not apply, Section 1334 sets the outer bounds of a bankruptcy court's authority to enjoin litigation under Section 105.   *See id.*; *see also In re Mirant Corp.*, 378 F.3d 511, 523 (5th Cir. 2004) ("While § 105(a) permits bankruptcy courts to enjoin actions that are excepted from the automatic stay by § 362(b)(4), … this authority is typically used

… only 'in exceptional circumstances.'").[7]  Thus, if the court in *Matter of Zale*

lacked discretionary stay authority under Section 105, then, *a fortiori*, the automatic

stay under Section 362 cannot apply in this case.  *See id.*  Put simply, the automatic

stay can never apply to a suit if there is no "related to" jurisdiction over that suit.

*See In re Bass*, 171 F.3d at 1024 ("[T]he court in question was a federal district court

and thus a court of broader jurisdiction than a bankruptcy court.").[8]

## II.   Even assuming 11 U.S.C. § 362 confers jurisdiction beyond 28 U.S.C. § 1334, the automatic stay does not apply to post-petition claims.

It is hornbook law that the automatic stay "does not apply to claims that arise

post-petition."  *Campbell*, 545 F.3d at 353.  And this Court has conclusively

determined that Appellants' lawsuit implicates only "post-petition" conduct, as it

does not "pursu[e] recompense for prior transgressions, but instead [is] attempting

to stop [the Archdiocese's] alleged discrimination going forward."  Doc. 3-2 at 92.

On this basis alone, the automatic stay does not apply.  *See Holland Am. Ins. Co.*,

777 F.2d at 996 ("The stay simply does not apply to post-bankruptcy events.").

---

[7] *See also Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d at 1188 (holding that automatic stay was inapplicable because of a regulatory exemption and that the bankruptcy court did not abuse its discretion in declining to issue a stay under Section 105 because the movant did not satisfy the requirements for a preliminary injunction).

[8] Even assuming the stay ever existed, it likely terminated upon the "removal and remand" of the case to federal court and back to state court.  *See Browning v. Navarro*, 743 F.2d 1069, 1075–78 (5th Cir. 1984) (considering, but not deciding, whether a debtor's removal to federal court and the federal court's subsequent remand terminated the automatic stay).

The doctrine of collateral estoppel prohibits the bankruptcy court from second-guessing this Court's conclusive ruling that the suit does not implicate pre-petition conduct.   "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v. United States*, 440 U.S. 147, 153 (1979).  Either unaware of or unconcerned with this Court's ruling that Appellants' suit complains only of "current conduct," doc. 3-2 at 92, the bankruptcy court concluded that the automatic stay applies "because … this is a suit that could have been brought … before the petition date," doc. 3-2 at 209.

As an initial matter, it must be noted that the bankruptcy court imagined a factual impossibility, as a suit complaining about conduct in 2022 obviously could not have been brought before the petition date.  Without a time machine to predict the future, Appellants could not have filed a suit before May 2020 based on the Archdiocese's "current conduct"—i.e., conduct occurring in 2022.  The bankruptcy court speculated, based on no evidence,[9] that the Archdiocese has been asking discriminatory questions in its applications since before May 2020.  Assuming this

---

[9] The Fifth Circuit has made clear that a prepetition claim requires "some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant."  *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994). But neither the Archdiocese nor the bankruptcy court identified any such "prepetition relationship" between the Appellants and the Archdiocese.  *See id.*

speculation were true, it is irrelevant, because a suit complaining about pre-May 2020 applications could be remedied only by *damages*—a remedy that Appellants' suit "overtly" disclaims.  Doc. 3-2 at 92.  Perhaps a different plaintiff could file a suit seeking damages based on pre-May 2020 conduct.  But Appellants—who are the "master[s] of the[ir] claim[s]"—did not.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Putting aside the factual impossibilities, the bankruptcy court cannot re-adjudicate this Court's conclusions, even if it disagrees with them.  Collateral estoppel applies when: "(1) the issue at stake is identical to the one involved in the prior action, (2) the issue was actually litigated, and (3) the issue was necessary to support judgment in the prior action."  *Matter of Swate*, 99 F.3d 1282, 1289 (5th Cir. 1996).  All three prongs are easily satisfied here.

The first two prongs are met because the issue is "identical" and was "actually litigated."  *See id.*  The Archdiocese argued that Appellants' lawsuit "conceivably challenges conduct that occurred prior to the bankruptcy proceeding, not just "post-petition" acts."  Doc. 3-2 at 90.  But this Court flatly rejected that argument, holding that the suit implicates only "current conduct" and does not "pursu[e] recompense for prior transgressions."  Doc. 3-2 at 92.  The third prong is also met, because the determination that the suit implicated only post-petition conduct "was necessary to support [the] judgment."  *See Matter of Swate*, 99 F.3d at 1289.  In particular, the

Court relied on this determination in finding no "related to" jurisdiction, because "post-petition claims are not dischargeable in bankruptcy and, therefore, do not affect the estate." *See* doc. 3-2 at 92 n.22

### III.   The automatic stay does not apply because Appellants' suit seeks only injunctive relief and does not seek control over "property of the estate."

Even assuming Appellants' suit had any connection to pre-petition conduct, the automatic stay still does not apply, because the suit seeks only injunctive relief that would not control any "property of the estate." 11 U.S.C. § 362.  The automatic stay applies only to actions that "seek[] to obtain or exercise control over the property of the debtor." *Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1148.  And this Court has already rejected the Archdiocese's argument that Appellants' suit is "automatically stayed … because it requests an injunction concerning the Archdiocese's admissions applications.'"  Doc. 3-2 at 106 (quoting 11 U.S.C. § 362(a)(3)).   It explained that an injunction "will have no effect on the applications," which "will remain as part of the estate's property."  Doc. 3-2 at 92. In the bankruptcy court, Appellants argued that the "property of the estate" issue had been conclusively resolved, but the court was unmoved.[10]

---

[10] The bankruptcy court appears to have confused § 1334(b)'s *jurisdictional* provisions, which grant the power to hear cases related to a bankruptcy, with § 1334(c)'s *abstention* provisions, which require or allow courts to abstain from hearing certain actions, even though they have jurisdiction.  It mused about a mechanic obtaining a lien on a truck. Doc. 3-2 at 156–57.  While a district court would likely abstain from hearing such a case, there is no doubt that the court would have *jurisdiction*—after all, it involves "property of the estate" and is thus "related to" the bankruptcy. *See Matter of Wood*, 825 F.2d at 93.  Flowing from this same

The Archdiocese opted to litigate the applicability of the automatic stay in the motion-to-remand briefing, and this Court had the authority "to determine the applicability of the stay."  *See Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990).  By determining that the suit does not affect estate property, this Court necessarily concluded that the stay does not apply.  *See id.*; *Arnold v. Garlock Inc.*, 288 F.3d 234, 236 (5th Cir. 2002) (district courts "retain jurisdiction to determine the applicability of the [automatic] stay to litigation pending before them").  Incredibly, the Archdiocese sought a "do-over" from the bankruptcy court, arguing just a week later that the automatic stay applies because its "admissions applications … constitute property of the estate."  Doc. 3-2 at 64.  But once again, collateral estoppel bars the relitigation of this Court's conclusions.  *See Picco*, 900 F.2d at 850 (a "court's determination of its own jurisdiction is subject to the principles of *res judicata*" and "generally may not be challenged in a collateral proceeding").  Because this "property of the estate" issue is identical, was actually litigated, and was necessary to support the judgment, the bankruptcy court cannot second-guess this Court's conclusion.  *See Matter of Swate*, 99 F.3d at 1289.

Finally, even assuming Appellants' suit affected estate property, the automatic stay is still inapplicable because it does not protect "tortious uses of [estate] property

jurisdiction, Section 362 automatically stays the sale of the truck, whether or not the district court abstains.  But when, as here, the case has no "conceivable effect on the[] bankruptcy," there is no federal *jurisdiction*, so the automatic stay never comes into effect.  *See id.*

by the debtor." *Dominic's Rest. of Dayton, Inc.*, 683 F.3d at 760–61.  Were it otherwise, "bankrupt businesses which operated post-petition could violate [plaintiffs'] rights with impunity."  *Id.*  Here, Appellants' suit is "[a]t its core, … an attempt to prevent allegedly unlawful conduct" and is thus not subject to the automatic stay.  *See Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56, 59 (D.N.J. 2000).

In concluding that the automatic stay applies to actions for injunctive relief that do not seek to control estate property, the bankruptcy court positioned itself as an extreme outlier among federal courts.  *See, e.g.*, *In re Colorado Altitude Training LLC*, No. 10-21951-EEB, 2012 WL 993530, at *3 (Bankr. D. Colo. Mar. 23, 2012) ("The automatic stay does not apply to actions seeking to enjoin allegedly unlawful post-petition conduct by the Debtor."); *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-JDW-EAJ, 2012 WL 12905185, at *2 (M.D. Fla. Oct. 24, 2012) (["T]he commission of torts … [is] not protected by the Bankruptcy Code."); *Driggs v. Winters*, No. 3:05cv48BN, 2005 WL 8172231, at *5 (S.D. Miss. Feb. 18, 2005) (automatic stay did not apply to claim seeking "to enjoin … post-petition infringing conduct"); *Larami Ltd.*, 244 B.R. at 59 (automatic stay did not apply to injunctive relief "to prevent [defendant] from infringing on its patented water gun design," where plaintiff "d[id] not seek to seize control of any of [defendant's] inventory"); *Amplifier Rsch. Corp. v. Hart*, 144 B.R. 693, 694–95 (E.D. Pa. 1992) (automatic stay inapplicable because plaintiff "s[ought] to 'control'—indeed, enjoin—[was] the

commission of torts"); *United States v. ILCO, Inc.*, 48 B.R. 1016, 1024 (N.D. Ala. 1985) (automatic stay inapplicable where plaintiff was "seek[ing] a remedy that will protect [the public] from potential *future* harm" rather than "compensate for past wrongful acts which have already resulted in injuries").

As these cases make clear, applying the automatic stay to a suit like Appellants' would "effectively permit a bankrupt company which stays in business post-petition to commit torts with impunity, a privilege not afforded to non-bankrupts." *See Amplifier Rsch. Corp.*, 144 B.R. at 695. Appellants' suit does not implicate estate property at all. But even if it did, that does not make it an effort to exercise *control* over the estate. *See id.* ("[T]he fact that EMCO owns its report does not make Amplifier's effort to stop its tortious circulation an 'act ... to exercise control over property of the estate' for purposes of the bankruptcy stay.").

Nor is it relevant that defending the suit would force the Archdiocese to "expend funds." *See Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d at 1186. Instead, the applicability of the automatic stay turns "on the nature of the injuries which the challenged remedy is intended to redress—including whether [a] plaintiff seeks compensation for past damages or prevention of future harm." *Id.* After all, "in contemporary times, almost everything costs something." *Id.* (quoting *Penn Terra Ltd. v. Dep't of Env't Res., Com. of Pa.*, 733 F.2d 267, 276 (3d Cir. 1984)); *see also ILCO, Inc.*, 48 B.R. at 1023 (holding that automatic stay was inapplicable

even though the relief sought, if granted, would "force[]" the debtor "to spend money" cleaning up a hazardous waste site).

To illustrate this point, consider a recent suit against the Archdiocese.  A group of tour companies sought an injunction after the Archdiocese excluded all but one company from giving tours of its historic cemeteries.  *See* Case No. 2:21-cv-02051-BWA-MBN.  Even though this suit was filed post-petition (November 2021) and undoubtedly cost a significant amount of money to defend, the Archdiocese did not argue that the automatic stay applied to the suit.  *See id.*  Instead, it engaged in six months of litigation in the district court, followed by an appeal.  *See New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026 (5th Cir. 2023).  The Archdiocese cannot argue with a straight face that Appellants' suit is covered by the automatic stay when it gladly litigated the cemetery suit without ever invoking the automatic stay.

## IV.   The Court has jurisdiction over this appeal.

Appellants have already responded to the motion to dismiss for lack of jurisdiction.  Doc. 6.  The Archdiocese has now filed a reply brief, in which it raises several new arguments.  Doc. 7-2.  Appellants take this opportunity to briefly respond to these new arguments.

First, the Archdiocese argues that *Rajala v. Gardner*, 709 F.3d 1031, 1035 (10th Cir. 2013), and *In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012), are

inapposite because "neither concerned an order **denying** relief from the automatic stay." Doc. 7-2 (emphasis in original). But this distinction is immaterial. As explained by the Supreme Court, a stay-relief order "yields a final, appealable order when the bankruptcy court unreservedly grants **_or denies_** relief." *Ritzen Grp.*, 140 S. Ct. at 586 (emphasis added). Indeed, the order at issue in *Ritzen* was one denying relief from the stay, and the Court concluded that it was appealable. *Id.*[11]

Second, the Archdiocese argues that *In re Mayer*, 28 F.4th 67, 71 (9th Cir. 2022), is inapposite because "Appellants did not file an adversary proceeding." Doc. 7-2 n.2. This argument fails for two reasons. First and foremost, no jurisdiction exists for an adversary proceeding because **_Appellants' lawsuit is not "related to" the bankruptcy_**. Doc. 3-2 at 89–92. It is well established that the "only path to jurisdiction" for an "adversary proceeding" is 28 U.S.C. § 1334. *Matter of Karcredit, LLC*, No. 21-30649, 2022 WL 4103265, at *2 (5th Cir. Sept. 7, 2022) (citing *In re Spillman Dev. Grp.*, 710 F.3d 299, 303–05 (5th Cir. 2013)). Second, even if Appellants could have filed an adversary proceeding, the Archdiocese does not explain how doing so would have made the order any more final. Just as *In re Mayer* conclusively decided *where* the litigation would occur (i.e., in federal court),

---

[11] *See also Matter of Lieb*, 915 F.2d 180, 185 n.3 (5th Cir. 1990) ("Orders granting *or denying* relief from the automatic stay are final and appealable.") (emphasis added).

the bankruptcy court conclusively decided *when* Appellants' litigation can occur (i.e., not until confirmation of a plan or lifting of the stay).

Third, the Archdiocese contends that the issues before the bankruptcy court were not "bifurcated." Doc. 7-2 at 2–4. But this is plainly incorrect. Indeed, Appellants' own motion bifurcated the issues. Doc. 3-2 at 10–12 (part "A" of argument, arguing that stay does not apply); Doc. 3-2 at 12–15 (part "B" of argument, arguing that, if the stay does apply, good cause exits to lift it). More importantly, the Court itself treated the issues separately.

> Ok, so let's take this one step at a time. Question 1, is there an automatic stay? Absolutely. …. It does apply. ***The second question is more interesting, though, and up for debate***. Is there cause [to lift the stay] under 362(d)(1)?

Doc. 3-2 at 188 (emphasis added). Thus, the Court plainly bifurcated the issues, "unreservedly" concluding that the stay applies, but withholding judgment as to whether cause exists to lift it. *See Ritzen Grp.*, 140 S. Ct. at 586.

Fourth, the Archdiocese does not dispute that it failed to raise "bankruptcy standing" below. Instead, it creates an imaginary distinction between standing in the bankruptcy court and standing on appeal. But the "person aggrieved" test governs bankruptcy standing in the bankruptcy court, too. *See Matter of Technicool Sys., Inc.*, 896 F.3d 382, 384 (5th Cir. 2018) (affirming bankruptcy court ruling that party "lacked standing to object because he was not a creditor and did not have a stake in the estate"). Obviously, Appellants' pecuniary interest is no different now than it

was in the bankruptcy court.  Because the Archdiocese does not explain why it failed to raise standing below, it has waived this "prudential" limitation on appeal.  *See Bd. of Mississippi Levee Comm'rs v. U.S. E.P.A.*, 674 F.3d 409, 417 (5th Cir. 2012).

Fifth, the Archdiocese does not dispute that automatic-stay sanctions are pecuniary or that it has explicitly threatened Appellants with such sanctions if they dare litigate their suit.  Doc. 6 at 15–16.  Instead, it merely argues that there is currently "no motion for sanctions pending."  Doc. 7-2 at 5.  But Appellants do not need to "expose [themselves] to liability before … challeng[ing] the basis for the threat."  Doc. 6 at 16 (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 154 (1967); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014); and *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–129 (2007)).

Sixth, rather than dispute that "exceptional learner" schools cost more than other Catholic schools, doc. 6 at 16–18, the Archdiocese asks this Court to close its eyes and disregard this fact.  Specifically, it argues that the Court "should not consider [Appellants'] Exhibits," because "the Bankruptcy Court did not consider" them.  Doc. 7-2 at 5.  This argument is ridiculous: Appellants did not introduce these documents because *the Archdiocese did not challenge their bankruptcy standing in the bankruptcy court*.  In any event, these tuition documents are judicially noticeable, because they are on the schools' publicly available websites and are "not subject to reasonable dispute."  *See* Fed. R. Evid. 201(b).

## CONCLUSION

For the reasons given above, this Court should vacate the order of the bankruptcy court and enter a comfort order confirming that the automatic stay does not apply to Appellants' lawsuit.

Respectfully submitted,

January 27, 2023

   /s/ *Chris Edmunds*

Chris Edmunds,
Counsel for Appellants
LBSA: 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that Appellants' principal brief complies with Rule 8015(h) because, excluding the parts exempted under Rule 8015(g), it contains 8,295 words.  Fed. R. Bankr. P. 8015.


___*/s/ Chris Edmunds*_____
Chris Edmunds
Attorney for Appellants