**CASE NO. 22-04552, SECT. "T"(1)**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**IN RE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS**

**Minor Children,**

*Appellants*,

**v.**

**Roman Catholic Church of the Archdiocese of New Orleans, et al.,**

*Appellees*.

**Appeal from an Order of the United States Bankruptcy Court for the
Eastern District of Louisiana, Case No. 20-10846, Sect. "A,"
Honorable Meredith S. Grabill**

**JOINT PRINCIPAL BRIEF OF APPELLEES,
THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS AND THE OFFICIAL
COMMITTEE OF UNSECURED COMMERCIAL CREDITORS**

R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
LAURA F. ASHLEY (#32820)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8118
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: mmintz@joneswalker.com
Email: lashley@joneswalker.com

*Counsel for Appellee, The Roman
Catholic Church of the Archdiocese of
New Orleans*

PAUL D. STEWART, JR. (#24661)
WILLIAM S. ROBBINS (#24627)
BRANDON A. BROWN (#25592)
BROOKE W. ALTAZAN (#32796)
Stewart Robbins Brown & Altazan, LLC
301 Main St., Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Email: dstewart@stewartrobbins.com
Email: wrobbins@stewartrobbins.com
Email: bbrown@stewartrobbins.com
Email: baltazan@stewartrobbins.com

*Counsel for Appellee, The Official
Committee of Unsecured Commercial
Creditors*

## DISCLOSURE STATEMENT

The undersigned counsel of record certifies, pursuant to Fed. R. Bankr. P. 8012(b) and 8014(b), that The Roman Catholic Church of the Archdiocese of New Orleans is a non-profit religious corporation incorporated under the laws of the State of Louisiana.  It has no parent corporation, and it issues no stock.  As such, no publicly held corporation owns 10% or more of its stock.

The Official Committee of Unsecured Commercial Creditors (the "**Commercial Committee**") is a statutorily appointed committee existing only within the confines of this Bankruptcy Case.  *See* 11 U.S.C. § 1102.  The Commercial Committee is not a "non-governmental corporation" within the meaning of Fed. R. Bankr. P. 8012(a).  As such, the Commercial Committee does not believe that it is required to provide a corporate ownership statement under Fed. R. Bankr. P. 8012(a).

Dated: February 27, 2023

*/s/ Laura F. Ashley*

LAURA F. ASHLEY (#32820)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8118

***Counsel for Appellee, The Roman Catholic Church of the Archdiocese of New Orleans***

#101044875v1

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................ ii

TABLE OF AUTHORITIES ................................................................v

STATEMENT REGARDING ORAL ARGUMENT ................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................2

STANDARD OF REVIEW ...................................................................3

STATEMENT OF THE CASE.................................................................4

    A.    The Petition Date and Appointment of the Committees......................4

    B.    Appellants' Improperly Filed State Court Action.................................5

    C.    The Removal and Subsequent Remand of the State Court
        Action. ...........................................................................................6

    D.    Appellants' Lift Stay Motion. ........................................................7

        1. Filing of the Lift Stay Motion in the Bankruptcy Case. ..................7

        2. The Objections to the Lift Stay Motion. ..........................................9

        3. The Supplemental Objection to the Lift Stay Motion....................11

        4. The Bankruptcy Court's Interlocutory Order Denying Stay
        Relief Without Prejudice. ...............................................................11

SUMMARY OF THE ARGUMENT .....................................................14

ARGUMENT ....................................................................................15

    A.    The Bankruptcy Court did not abuse its discretion when it
        properly exercised its jurisdiction under 11 U.S.C. § 1334 to
        enforce the automatic stay...............................................................15

        1. Any proceeding to determine the scope and applicability of
        the automatic stay "arises under" title 11...........................................16

2. The merits of the State Court Action are irrelevant to the Bankruptcy Court's jurisdiction to enforce the automatic stay. .........20

B.      Appellants have failed to show the Bankruptcy Court abused its discretion in enforcing the automatic stay. ..........................................25

1. Appellants cannot establish the elements required to prove their collateral estoppel claim. ..........................................................26

2. The Bankruptcy Court did not abuse its discretion in holding that the automatic stay applies to the State Court Action. ..................30

CONCLUSION ........................................................................................................34

CERTIFICATE OF SERVICE ................................................................................35

CERTIFICATE OF COMPLIANCE.......................................................................35

#101044875v1

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Aheong v. Mellon Mortg. Co. (in Re Aheong)*, 276 B.R. 233 (B.A.P. 9th Cir. 2002) ............................................................................................................18

*Akzo Nobel, Inc. v. United States*, 478 F. App'x 126 (5th Cir. 2012) ......................3

*Amedisys, Inc. v. Nat'l Century Fin. Enters. (In re Nat'l Century Fin. Enters.)*, 423 F.3d 567 (6th Cir. 2005) ..........................................................................21

*Barron v. Countryman*, 432 F.3d 590 (5th Cir. 2005)..............................................3

*Brister v. A.W.I.*, 946 F.2d 350 (5th Cir. 1991) ......................................................27

*Cargill, Inc. v. United States*, 173 F.3d 323 (5th Cir. 1999) ...................................3

*Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60 (6th Cir. 1983) .....................29

*Colvin v. Amegy Mortg. Co., L.L.C.*, 507 B.R. 169 (W.D. Tex. 2014) ..................16

*Dominic's Rest. of Dayton*, *Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012) .............32

*Driggs v. Winters*, No. 3:05-cv-48, 2005 U.S. Dist. LEXIS 56501 (S.D. Miss. Feb. 18, 2005) ...............................................................................................32

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995).......................24

*Garner v. Bankplus*, 470 B.R. 402 (S.D. Miss. 2012)............................................19

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st Cir. 1994)..........................20

*In re Cinematronics, Inc.*, 111 B.R. 892 (Bankr. S.D. Cal. 1990) .........................31

*In re City of Stockton, Cal.*, 499 B.R. 802 (Bankr. E.D. Cal. 2013).......................32

*In re Colo. Altitude Training LLC*, No. 10-21951, 2012 Bankr. LEXIS 1276 (Bankr. D. Colo. Mar. 23, 2012) ...................................................................32

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ...................................................27

*In re Epstein*, 314 B.R. 591 (Bankr. S.D. Tex. 2004).............................................28

*In re Essar Steel Minnesota, LLC*, 47 F.4th 193 (3d Cir. 2022).............................20

#101044875v1

*In re Jefferson Cty.*, 484 B.R. 427 (Bankr. N.D. Ala. 2012) ...................................32

*In re Mack*, No. 17-3587, 2018 U.S. Dist. LEXIS 53058 (E.D. La. Mar. 29, 2018) ..........................................................................................................18

*In re McConathy*, No. 90-13449, 2022 Bankr. LEXIS 1429 (Bankr. W.D. La. May 20, 2022) ...................................................................................................5

*In re Moore & Moore Trucking, LLC*, No. 20-10925, 2020 Bankr. LEXIS 2865 (Bankr. E.D. La. Oct. 14, 2020) ...............................................................3

*In re Ramba, Inc.*, 416 F.3d 394 (5th Cir. 2005) .........................................................4

*In re Shenango Group, Inc.*, 501 F.3d 338 (3d Cir. 2007) .......................................20

*In re Valley*, No. H-09-0727, 2009 U.S. Dist. LEXIS 83248 (S.D. Tex. Sep. 11, 2009) ....................................................................................................3, 4

*Jones v. Cain*, 600 F.3d 527 (5th Cir. 2010)............................................................10

*Jones v. Gusman*, 515 F.Supp.3d 520 (E.D. La. 2021) ...........................................10

*King v. Skolness (In re King)*, 624 B.R. 259 (Bankr. N.D. Ga. 2020)................2, 18

*Klarchek Family Tr. v. Costello (In re Klarchek)*, 508 B.R. 386 (Bankr. N.D. Ill. 2014)........................................................................................................17

*Ledford v. Tiedge (In re Sams)*, 106 B.R. 485 (Bankr. S.D. Ohio 1989) ...............33

*Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, No. 09-70659, 2015 Bankr. LEXIS 802 (Bankr. S.D. Tex. Mar. 12, 2015) ...............................2, 17

*LTL Mgmt., LLC v. N.M. (In re LTL Mgmt., LLC)*, 645 B.R. 59 (Bankr. D.N.J. 2022)** ................................................................................... 14, 16, 17

*Matter of Braniff Airways*, 783 F.2d 1283 (5th Cir. 1986)......................................26

*Matter of Wood*, 825 F.2d 90 (5th Cir. 1987).................................................. 14, 17

*Newberry v. City of San Bernardino (In re City of San Bernardino)*, 558 B.R. 321 (C.D. Cal. 2016).......................................................................... 31, 32

*NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir. 1986)..................29

#101044875v1

*Perry v. Dearing (In re Perry)*, 345 F.3d 303 (5th Cir. 2003) ...................................3

*Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004).........................26

*Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921 (3d Cir.1990) ........................24

*RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995)................................26

*Robertson v. Dennis*, 330 F.3d 696 (5th Cir. 2003).................................................4

*Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011)................................19

*United States v. ILCO, Inc.,* 48 B.R. 1016 (N.D. Ala. 1985) ..................................32

*VSP Labs, Inc. v. Hillair Capital Invs., L.P. (In re PFO Global Inc.)*, 26 F.4th 245 (5th Cir. 2022) ..............................................................................23

*Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562 (5th Cir. 1995)...................22, 23

*Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554 (B.A.P. 6th Cir. 2019)... 29, 33

## **Statutes**

11 U.S.C. § 362......................................................................................................5

11 U.S.C. § 362(a)(1)...........................................................................................30

28 U.S.C. § 1334(b) .............................................................................................16

28 U.S.C. § 157(b)(2)(G) ............................................................................ 19, 21

## **Rules**

Fed. R. Bankr. P. 8003 ...........................................................................................1

## **Treatises**

3 Collier on Bankruptcy ¶ 362.03[3] (16th ed. 2022)...........................................30

3 Collier on Bankruptcy ¶ 4001.04[2] (16th ed. 2022)...........................................9

#101044875v1

## STATEMENT REGARDING ORAL ARGUMENT

Appellees, The Roman Catholic Church of the Archdiocese of New Orleans (the "**Archdiocese**" or "**Debtor**") and the Commercial Committee, respectfully submit that oral argument is unnecessary to aid the Court's decisional process because the facts and legal arguments are adequately presented in the briefs.

## JURISDICTIONAL STATEMENT

The Bankruptcy Court exercises jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. § 1334, and the Reference authorized by 28 U.S.C. § 157(a) and Local Rule 83.4.1.  On November 2, 2022, the Bankruptcy Court issued an order denying Appellants' *Motion for "Comfort Order" that Automatic Stay is Inapplicable, or, Alternatively, for Relief from Automatic Stay* [R. 3-2, pp. 7-54] (the "**Lift Stay Motion**").  Pursuant to Fed. R. Bankr. P. 8003, Appellants appealed to this Court on November 15, 2022, initiating the above-captioned appeal (the "**Appeal**").  [R. 3-2, pp. 214-15].

On January 17, 2023, the Archdiocese filed a *Motion to Dismiss Appeal* [R. 5] (the "**Motion to Dismiss**"), arguing that Appellants lacked standing to bring this appeal and this Court lacked subject matter jurisdiction under 28 U.S.C. § 158(a) because Appellants failed to seek leave to appeal the Bankruptcy Court's interlocutory Order.  [R. 5-1, pp. 7-16].  In response, Appellants filed the *Opposition to the Motion to Dismiss the Appeal* [R. 6].  On January 30, 2023, in further support

of the Motion to Dismiss, the Archdiocese filed *The Roman Catholic Church of the Archdiocese of New Orleans' Reply in Support of Motion to Dismiss Appeal* [R. 10] (the "**Reply**").

The Archdiocese adopts and incorporates by reference the arguments, law, and facts from its Motion to Dismiss and Reply [R. 5, 10]. As detailed in the Motion to Dismiss, the non-finality of the Bankruptcy Court's Order renders this Court without jurisdiction to consider this Appeal. [R. 5-1, pp. 7-14]. Additionally, for the reasons set forth in the Motion to Dismiss and the Reply, Appellants lack appellate standing, and this Appeal is constitutionally moot. [R. 5-1, pp. 14-18].

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Any proceeding seeking relief from, or redress regarding, the automatic stay "arises under" the Bankruptcy Code. *See Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, No. 09-70659, 2015 Bankr. LEXIS 802, at *9 (Bankr. S.D. Tex. Mar. 12, 2015) ("A claim for relief under § 362(a) is a matter which arises under the Bankruptcy Code for the purposes of 28 U.S.C. § 1334(b)"). Because motions for relief from the automatic stay "arise under" the Bankruptcy Code, a bankruptcy court has jurisdiction to hear all matters related to the automatic stay's effect and enforcement. *King v. Skolness (In re King)*, 624 B.R. 259, 273 (Bankr. N.D. Ga. 2020). As such, did the Bankruptcy Court correctly hold that it has

jurisdiction to determine the applicability of the automatic stay to the State Court Action?

2.      Based on the evidence before it, the Bankruptcy Court held that (i) the automatic stay applies pursuant to 11 U.S.C. § 362(a)(1), and (ii) "cause" does not exist to modify the automatic stay under 11 U.S.C. § 362(d)(1).  Thus, did the Bankruptcy Court abuse its discretion in denying relief from the automatic stay?

## STANDARD OF REVIEW

"A district court, in reviewing the findings of a bankruptcy court, acts in an appellate capacity." *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 308 (5th Cir. 2003).  An appellate court reviews decisions granting or denying a motion to lift the automatic stay for abuse of discretion.  *See In re Moore & Moore Trucking, LLC*, No. 20-10925, 2020 Bankr. LEXIS 2865, at *6 (Bankr. E.D. La. Oct. 14, 2020). "[A] court abuses its discretion when it (1) relies on clearly erroneous factual findings, (2) relies on erroneous conclusions of law, or (3) misapplies its factual or legal conclusions." *Akzo Nobel, Inc. v. United States*, 478 F. App'x 126, 131-32 (5th Cir. 2012) (quoting *Cargill, Inc. v. United States*, 173 F.3d 323, 341 (5th Cir. 1999)).

"The Court reviews a bankruptcy judge's conclusions of law *de novo* and findings of fact under the 'clearly erroneous' standard." *In re Valley*, No. H-09-0727, 2009 U.S. Dist. LEXIS 83248, at *4 (S.D. Tex. Sep. 11, 2009) (citing *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005)).  A factual finding is clearly

erroneous "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (internal quotations and citation omitted). "Stated differently, a 'factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole.'" *In re Valley*, 2009 U.S. Dist. LEXIS 83248, at *4 (citing *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005)).

## STATEMENT OF THE CASE

**A.     The Petition Date and Appointment of the Committees.**

On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**"), commencing a chapter 11 case (the "**Bankruptcy Case**"). [R. 3-4, p. 198]. In the Bankruptcy Case, the Office of the United States Trustee (the "**UST**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") on May 20, 2020, which Committee was subsequently reconstituted several times. The Commercial Committee was appointed on March 5, 2021. [R. 3-4, p. 198]. Both the Committee and the Commercial Committee are charged with representing the interests of the separate sets of unsecured creditors in the Bankruptcy Case.

#101044875v1

The commencement of the Bankruptcy Case triggered the automatic stay, which prohibits, among other things, the commencement or continuance of any and all actions, including lawsuits, against the Debtor and the Debtor's estate.  11 U.S.C. § 362.  Before taking action against the Debtor, including filing a lawsuit, creditors must seek relief from the automatic stay in accordance with the Bankruptcy Code.  *Id.*; *see also In re McConathy*, No. 90-13449, 2022 Bankr. LEXIS 1429, at *41 (Bankr. W.D. La. May 20, 2022) (recognizing that creditors have a "duty to not violate the stay" and have "several means by which to ensure they did not do so" prior to filing a lawsuit against a debtor).

## B.   Appellants' Improperly Filed State Court Action.

On August 15, 2022, after the Petition Date, and in violation of the automatic stay,[1] Appellants filed a Class Action Petition for Injunction (the "**Petition**") against the Archdiocese in the Civil District Court for the Parish of Orleans (the "**State Court**"), commencing a state court action (the "**State Court Action**").  [R. 3-2, pp. 25-31].  The State Court Action is a putative class action against the Archdiocese

---

[1] The automatic stay prevented Appellants from filing the State Court Action after the Petition Date.  Nonetheless, before seeking stay relief, Appellants filed the State Court Action in violation of the automatic stay.  *See, e.g., McConathy*, *supra* (parties have a "duty to not violate the stay").  Appellants continued to litigate the Remand Motion, as defined *infra*, in violation of the automatic stay.  Now, Appellants seek to improperly rely on the Remand Order, which they obtained without stay relief, to collaterally estop litigation over the automatic stay itself.  This is backwards and an abuse of the bankruptcy system.

#101044875v1

that asserts unlawful discrimination against prospective students with disabilities. [R. 3-2, p. 25, ¶ 2].

The Petition preliminarily defines the putative class as "school-age children with disabilities in the New Orleans metropolitan area" and asserts that "[t]he class includes thousands of members."  [R. 3-2, p. 29, ¶¶ 46, 48].  Specifically, Appellants allege that "[t]he Archdiocese and other Catholic schools systematically discriminate against children with disabilities through their admissions questions, which unlawfully ask questions about disabilities."  [R. 3-2, p. 26, ¶ 20].  Appellants further allege that they have "suffered injuries as a result of Defendant's conduct." In addition to requests for declaratory and injunctive relief, Appellants request judgment for costs and attorney's fees.  [R. 3-2, p. 30, ¶¶ 56, 60].

**C.    The Removal and Subsequent Remand of the State Court Action.**

On August 31, 2022, the Archdiocese filed a Notice of Removal in this Court [R. 3-2, pp. 19-23], followed by a Notice of Suggestion of Bankruptcy and Automatic Stay.  On September 8, 2022, Appellants filed the *Motion to Remand to State Court* [R. 3-2, pp. 39-48] (the "**Remand Motion**"), urging this Court to remand the State Court Action for lack of subject matter jurisdiction, or in the alternative, based on the doctrines of mandatory or permissive abstention.  In response, on September 20, 2022, the Archdiocese filed its *Memorandum in Opposition to Motion to Remand to State Court* [R. 3-2, pp. 94-112], arguing that, for purposes of remand,

this Court had jurisdiction over the merits of the State Court Action pursuant to 28 U.S.C. § 1334(b).

On October 3, 2022, this Court entered an Order [R. 3-2, pp. 89-92] (the "**Remand Order**") remanding the State Court Action to the State Court.   The Remand Order addressed the question of "whether the Plaintiffs' *state court suit* is 'related to' Defendant's bankruptcy case under § 1334."   [R. 3-2, p. 91].   In particular, the Remand Order analyzed whether the anticipated outcome of the State Court Action "(1) alters the rights, obligations, and choices of action of the debtor, and (2) has an effect on the administration of the estate."   [R. 3-2, p. 91].   The Remand Order, however, did not address whether the automatic stay applies to the State Court Action or whether the Bankruptcy Court has jurisdiction to procedurally prohibit, through the automatic stay, further adjudication of the State Court Action.[2]

**D.   Appellants' Lift Stay Motion.**

**1.     Filing of the Lift Stay Motion in the Bankruptcy Case.**

On September 13, 2022, *after* filing the State Court Action, Appellants filed the Lift Stay Motion, seeking relief from the automatic stay imposed by § 362(a) of

---

[2] A decision to remand a case, functionally, is a decision by a court as to whether that court can or will exercise authority to determine the merits of a grievance.  Here, remand by this Court of the underlying State Court Action resulted in a determination that this Court did not have jurisdiction under 28 U.S.C. § 1334 to determine the *merits* of Appellants' class action claims. However, determining that a court does not have jurisdiction to determine the merits of a grievance is not the same inquiry as determining whether the automatic stay, which procedurally prohibits litigants from continuing adjudication of that grievance, should be modified.

the Bankruptcy Code to litigate the State Court Action.  [R. 3-2, pp. 7-54].  In the Lift Stay Motion, Appellants incorrectly alleged that "the automatic stay does not apply to Movants' lawsuit," and as such, the "Movants are entitled to a 'comfort order' so they can comfortably 'proceed with legal action in some other court.'" [R. 3-2, p. 9].  Further, relying on mere conjecture and unsupported allegations, Appellants argued that "cause" exists to lift the automatic stay under § 362(d)(1) of the Bankruptcy Code.  [R. 3-2, p. 9].  Importantly, Appellants emphasized in the Lift Stay Motion that the primary purpose of the State Court Action was to "prevent the Archdiocese and its affiliated schools from mailing out applications on November 9, 2022."  [R. 3-2, p. 10].

In contravention of the Bankruptcy Court's Local Rules, Appellants attempted to set the hearing on the Lift Stay Motion on less than twenty-one (21) days' notice, and, after a Notice of Deficiency, further tried to expedite the hearing.  [R. 3-4, p. 10].[3]  On September 21, 2022, the Bankruptcy Court denied Appellants' *Motion to Set Expedited Hearing* (the "**Motion to Expedite**") and set the Lift Stay Motion for hearing on October 17, 2022.  [R. 3-4, pp. 117-18].

Refusing to comply with the Bankruptcy Court's Order denying the Motion

---

[3] After Appellants attempted to set the hearing on the Lift Stay Motion, the Bankruptcy Court issued a Notice of Deficiency, indicating that the next available hearing date for the Bankruptcy Case was October 17, 2022.  [R. 3-4, p. 12].  In an attempt to further circumvent the Bankruptcy Court's Local Rules and fix their mistake, Appellants subsequently sought to expedite the hearing on the Lift Stay Motion.  [R. 3-4, pp. 13-14].

to Expedite, Appellants filed an *Emergency Motion for Ex Parte Relief Under FRBP 4001(a)(2)* [R. 3-4, pp. 119-86] (the "**Ex Parte Stay Relief Motion**")[4] on September 28, 2022, seeking emergency *ex parte* stay relief under Rule 4001(a)(2) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").[5]  On October 3, 2022, the Bankruptcy Court denied the Ex Parte Stay Relief Motion, emphasizing that the Ex Parte Stay Relief Motion sought "identical relief" as the Motion to Expedite and cautioning Appellants' counsel to observe and adhere to the Bankruptcy Rules.  [R. 3-4, pp. 229-32] ("The Court strongly cautions counsel for the movants going forward to observe and adhere to the Federal Rules of Bankruptcy Procedure, specifically those that govern reconsideration and appeal of this Court's Orders.").

### 2.    The Objections to the Lift Stay Motion.

On October 11, 2022, the Debtor filed its *Objection to Motion for "Comfort Order" that Automatic Stay is Inapplicable, or, Alternatively, for Relief from*

---

[4] "The grating of ex parte relief from the automatic stay is an extraordinary step that rarely is appropriate." 3 Collier on Bankruptcy ¶ 4001.04[2] (16th ed. 2022).  In fact, "[t]here are extremely few situations in which threatened harm is both irreparable and so imminent that opposing parties cannot be given notice and participate in a hearing."  *Id.* at ¶ 4001.04[5].

[5] Appellants contemporaneously filed the *Ex Parte Motion for Leave to File Affidavits Under Seal* [R. 3-4, pp. 187-88] (the "**Ex Parte Motion to Seal**"), requesting permission to file certain affidavits in support of the Ex Parte Stay Relief Motion under seal.  Once again, on September 29, 2022, the Court issued a Notice of Deficiency in response to the Ex Parte Motion to Seal because Movants failed to hand-deliver the sealed documents to the Court as expressly required by the Bankruptcy Court's Administrative Procedures Manual.  [R. 3-4, p. 189].

#101044875v1

*Automatic Stay* [R. 3-2, pp. 55-73] (the "**Debtor's Objection**"), asserting that an

analysis of the applicable facts clearly demonstrates that (i) the State Court Action

is automatically stayed pursuant to §§ 362(a)(1) and 362(a)(3) of the Bankruptcy

Code, and (ii) the State Court Action is moot because the questions Appellants

sought to enjoin were revised and removed from the relevant admissions

applications.  The Commercial Committee contemporaneously filed the *Objection*

*by the Official Committee of Unsecured Commercial Creditors to Motion for*

*"Comfort Order" that Automatic Stay is Inapplicable, or, Alternatively, for Relief*

*from Automatic Stay* [R. 3-2, pp. 74-80] (the "**Commercial Committee's**

**Objection**"), adopting by reference the Debtor's Objection.  On October 12, 2022,

Appellants filed the *Reply Brief in Support of Motion for "Comfort Order"* [R. 3-2,

pp. 81-142] (the "**Reply in Support of the Lift Stay Motion**"), erroneously arguing

for the first time that the Bankruptcy Court does not have jurisdiction to hear the Lift

Stay Motion in light of the Remand Order.  [R. 3-2, pp. 81-83].[6]  Appellants failed

---

[6] To note, Appellants' Reply in Support of the Lift Stay Motion aggressively insists that the Bankruptcy Court does not have jurisdiction to hear and determine the Lift Stay Motion. Indeed, Appellants themselves filed and initiated the proceedings on the Lift Stay Motion.  As such, Appellants essentially argue the Bankruptcy Court does not have jurisdiction to provide the relief they, themselves, requested it provide to them (and to which they effectively consented to by filing the Status Report, defined *infra*).  Moreover, arguments raised for the first time in replies are generally waived.  *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010); *Jones v. Gusman*, 515 F.Supp.3d 520, 523 (E.D. La. 2021) ("As threshold matter, it is undisputed that the City failed to raise this argument in its motion, doing so for the first time in its reply brief. The general rule in the Fifth Circuit and this District is that arguments raised for the first time in a reply brief are waived.").

#101044875v1

to recognize that the relatedness of the *merits* of the State Court Action to the Bankruptcy Case is a *separate and distinct* inquiry from whether the Bankruptcy Court has authority to terminate or enforce the automatic stay.

### 3. The Supplemental Objection to the Lift Stay Motion.

Despite the pendency of the Lift Stay Motion and related pleadings in the Bankruptcy Case, Appellants, in contravention of the automatic stay, amended the Petition (the "**Amended Petition**") in the State Court Action on October 10, 2022 to (i) name an additional plaintiff, (ii) name an additional defendant, and (iii) assert additional facts. [R. 3-4, pp. 290-97]. The amendments came only days before the hearing on the Lift Stay Motion. As a result, the Debtor filed its *Supplemental Objection to Motion for "Comfort Order" that Automatic Stay is Inapplicable, or, Alternatively, for Relief from Automatic Stay* [R. 3-4, pp. 286-97] (the "**Debtor's Supplemental Objection**"), detailing Appellants' disregard of the automatic stay and judicial process.

### 4. The Bankruptcy Court's Interlocutory Order Denying Stay Relief Without Prejudice.

On October 17, 2022, the Bankruptcy Court held the hearing on the Lift Stay Motion. At the hearing, the Bankruptcy Court emphasized that the automatic stay applies to the State Court Action and shifted its inquiry as to whether cause exists under § 362(d) of the Bankruptcy Code to modify the automatic stay. [R. 3-2, p. 188]. The Court also recognized that the Remand Motion involved different

11

questions of law than the Lift Stay Motion.  [R. 3-2, p. 157] ("The automatic stay question is a completely different question.").

Moreover, during the hearing, Appellants recognized that, at that time, they were only looking for the allegedly discriminatory questions to be removed from the admissions applications.  [R. 3-2, p. 193].[7]  As such, the Bankruptcy Court instructed the parties to meet and confer regarding the status and content of the admissions applications that Appellants sought to enjoin.  [R. 3-4, pp. 305-06].  Additionally, the Court stated, "[t]he stay absolutely applies…I'm not going to let resources be diverted from this process in attorney time, principal time, money that could be going to creditors."  [R. 3-2, p. 196].[8]

---

[7] Appellants represented to the Court:

> The Court: If she's taken the questions out of the application, is that what you were looking for as the, at the preliminary --
>
> Mr. Edmunds: Ab--
>
> The Court: -- stage?
>
> Mr. Edmunds: Absolutely, your Honor.

[R. 3-2, p. 193].

[8] Footnote 4 of Appellants' brief is nothing more than an uninformed aspersion, demonstrating Appellants' or their counsel's unfamiliarity both with the Bankruptcy Code and the merits of the disputes that the Archdiocese has addressed and defended.  Nevertheless, Appellants' request highlights their misapprehension of jurisdiction in general.  This Court is sitting as a court of appeal, exercising appellate jurisdiction under 28 U.S.C. § 158(a).  As such, this Court's review is limited to the particular order or judgment being appealed.  Unless and until a proper and timely appeal of an order granting counsel fees under 11 U.S.C. § 330 or 331 is lodged, or a request to withdraw the reference made to the Bankruptcy Court under 28 U.S.C. § 157(a) is timely and properly made and then granted, this Court lacks any authority to review the appropriateness of such fees.  Thus, Appellants' request that this court engage in some free-range examination of

The parties subsequently conferred, and the Debtor provided Appellants with the *Declaration of RaeNell Houston* [R. 3-2, pp. 200-03], which represented that the Archdiocese withdrew the allegedly discriminatory admissions questions identified by Appellants from each admissions application.  As such, in preparation of the continued hearing, Appellants filed the *Status Report* [R. 3-2, pp. 199-203] (the "**Status Report**"), in which they represented the following:

> The Archdiocese has now confirmed that it has removed the allegedly discriminatory questions from the admissions applications of the schools it directly controls, and that is has recommended that the Parish Schools do the same. Given this development, Movants represent to this Court that they ***no longer intend to seek a preliminary injunction***.

 [R. 3-2, p. 199] (emphasis added).

At the continued hearing, the Bankruptcy Court held that it exercised jurisdiction over the Lift Stay Motion.  [R. 3-2, p. 209].  Additionally, the Bankruptcy Court stated that the automatic stay applies to the State Court Action because such action could have been brought before the Petition Date.  [R. 3-2, p. 209].  Considering Appellants' representations in the Status Report and the applicable facts, the Bankruptcy Court denied the Lift Stay Motion and expressly provided that Appellants are free to re-urge the Lift Stay Motion in the future.  [R.

---

matters outside the record of this appeal functions solely as gratuitous mudslinging and obfuscation.

3-2, p. 210].  On November 2, 2022, the Court entered its interlocutory order denying the Lift Stay Motion without prejudice (the "**Bankruptcy Court's Order**").  [R. 3-2, pp. 212-13].  Subsequently thereafter, on November 17, 2022, Appellants filed a Notice of Appeal of the Bankruptcy Court's Order.  [R. 3-2, pp. 214-15].

## SUMMARY OF THE ARGUMENT

For the reasons stated in the Motion to Dismiss, this Court does not have jurisdiction to hear this appeal.  To the extent this Court reaches the merits of this Appeal, the Bankruptcy Court had "arising under" jurisdiction pursuant to 28 U.S.C. § 1334(b) to enforce the automatic stay in the Bankruptcy Case.  A proceeding "arises under" the Bankruptcy Code when the Bankruptcy Code creates the cause of action or provides the substantive right being invoked.  *Matter of Wood*, 825 F.2d 90, 96 (5th Cir. 1987).  The automatic stay is codified in § 362(a) of the Bankruptcy Code and, thus, is "a substantive right provided by the Bankruptcy Code."  *See LTL Mgmt., LLC v. N.M. (In re LTL Mgmt., LLC)*, 645 B.R. 59, 69 (Bankr. D.N.J. 2022). Appellants do not cite a single case that refutes this well-established principle. Moreover, the Bankruptcy Court's jurisdiction to adjudicate the merits of the State Court Action is irrelevant to, and independent from, the Bankruptcy Court's jurisdiction to enforce the automatic stay.  Because this Appeal concerns only the enforcement of the automatic stay, and because the Lift Stay Motion constitutes a

core proceeding that "arises under" the Bankruptcy Code, the Bankruptcy Court did not abuse its discretion in denying the Lift Stay Motion.

Further, the issue at hand—the applicability of the automatic stay—was not litigated in the remand action.  In effect, the only issue ligated in relation to the Remand Motion was whether the District Court had jurisdiction over the merits of the State Court Action under 28 U.S.C. § 1334 by way of 28 U.S.C. § 1452(a). Certainly, the disparate policies underlying remand proceedings and stay relief proceedings result in definite differences in application and result.  Accordingly, the Bankruptcy Court was not collaterally estopped from considering Appellants' Lift Stay Motion.

Finally, the Bankruptcy Court did not abuse its discretion or clearly err in denying the Lift Stay Motion because that finding was supported by the Archdiocese's sworn statements and documents filed in the Bankruptcy Court, and was reconfirmed by Appellants' Counsel's representations made at the hearing on the Lift Stay Motion.

## ARGUMENT

**A.**     **The Bankruptcy Court did not abuse its discretion when it properly exercised its jurisdiction under 11 U.S.C. § 1334 to enforce the automatic stay.**

The Bankruptcy Court did not abuse its discretion or err by denying, without prejudice, the Lift Stay Motion.   The Bankruptcy Code imposes the automatic

#101044875v1

stay and provides debtors and the courts with the means to invoke it and to implement its protections.  As such, any proceeding to determine the scope and applicability of the automatic stay "arises under" the Bankruptcy Code pursuant to 28 U.S.C. § 1334(b).  Regardless of whether the Bankruptcy Court (or this Court) can entertain and resolve the merits of the State Court Action, the Bankruptcy Court has jurisdiction to determine the applicability of substantive rights created exclusively by federal bankruptcy law, such as the automatic stay.

**1.      Any proceeding to determine the scope and applicability of the automatic stay "arises under" title 11.**

Appellants' brief reflects a fundamental misunderstanding of bankruptcy jurisdiction.  Under 28 U.S.C. § 1334(b), bankruptcy jurisdiction extends to four types of matters: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11.  28 U.S.C. § 1334(b);  *In re LTL Mgmt., LLC*, 645 B.R. at 68; *Colvin v. Amegy Mortg. Co., L.L.C.*, 507 B.R. 169, 177-78 (W.D. Tex. 2014).  The classification of a proceeding under § 1334 depends on the connection of the proceeding to the bankruptcy case.

Appellants erroneously fixate their argument on the Bankruptcy Court's "related to" jurisdiction over the ***merits*** of the State Court Action.  This analysis is wrong and irrelevant to the instant Appeal.  *See In re LTL Mgmt., LLC*, 645 B.R. at 69 ("Ordinarily, the test for whether a bankruptcy court has jurisdiction does not turn

16

on whether it has jurisdiction over an underlying lawsuit referenced in an adversary proceeding….[I]f that were the case, bankruptcy courts would have neither jurisdiction to address nor authority to enter final judgment over a host of matters….").  Instead, the proper question is whether the Bankruptcy Court has "arising under," "arising in," or "related to" jurisdiction to determine the ***applicability of the automatic stay*** to the State Court Action.  *Id.* (noting that the focus for jurisdictional purposes is on the proceeding itself and the relief sought therein).  And, as explained below, a simple reading of 28 U.S.C. § 1334(b) reveals that the Bankruptcy Court has "arising under" jurisdiction to enforce the automatic stay against Appellants.

Upon the filing of a bankruptcy case, the automatic stay—a federal injunction prohibiting entities or litigants from commencing, continuing, or taking certain actions against the Debtor—is statutorily issued pursuant to 11 U.S.C. § 362(a).  As such, the "automatic stay is a creation of federal statutory law, extant only in a bankruptcy case." *Klarchek Family Tr. v. Costello (In re Klarchek)*, 508 B.R. 386, 389 (Bankr. N.D. Ill. 2014).  As a result, ***any proceeding seeking relief from, or redress regarding, the automatic stay, by definition "arises under" the Bankruptcy Code***.[9]  *Id.; see also In re Lopez*, 2015 Bankr. LEXIS 802, at *9 ("A claim for relief

---

[9] "Arising under title 11" describes those proceedings that "invoke[] a substantive right provided by title 11," and the phrase "arising in" describes matters "that could arise only in bankruptcy."  *In re Klarchek*, 508 B.R. at 405-06. (citing *Matter of Wood*, 825 F.2d at 97).

under § 362(a) is a matter which arises under the Bankruptcy Code for the purposes of 28 U.S.C. § 1334(b)"); *LTL Mgmt., LLC v. Doe*, No. 21-20252, 2022 U.S. Dist. LEXIS 11468, at *10 (D.N.J. Jan. 21, 2022) ("[S]ince the Bankruptcy Code both imposes the automatic stay and provides the [d]ebtor[] and the Court with the means to invoke it and to implement its protections, it is manifest that any proceeding to determine the scope and applicability of the automatic stay 'arises under' the Bankruptcy Code."); *In re King*, 624 B.R. at 273 ("The automatic stay only arises under the Bankruptcy Code and a bankruptcy court has jurisdiction to hear matters related to its effect and enforcement."); *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 248 (B.A.P. 9th Cir. 2002) ("In sum, we hold that Section 1334(b)'s reference to 'all civil proceedings arising under title 11' includes all proceedings arising under Section 362(d) of title 11."); *In re Mack*, No. 17-3587, 2018 U.S. Dist. LEXIS 53058, at *6 (E.D. La. Mar. 29, 2018) ("The bankruptcy judge is authorized to 'determine all cases under title 11 and all core proceedings arising under title 11,' including motions to modify the automatic stay."). Accordingly, because proceedings regarding the automatic stay involve a substantive right provided by the Bankruptcy Code, the Bankruptcy Court had "arising under" jurisdiction pursuant to 28 U.S.C. § 1334(b) to enforce the automatic stay in the Bankruptcy Case.

Moreover, matters clearly within the Bankruptcy Court's jurisdiction are set

forth in 28 U.S.C. § 157(b)(1) and may be heard and determined by the Bankruptcy Court as "core proceedings." *See Garner v. Bankplus*, 470 B.R. 402, 405 (S.D. Miss. 2012) ("[B]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11...and may enter appropriate orders and judgments."). "Although the statute does not define 'core proceedings,' the Fifth Circuit has interpreted the statute as equating core proceedings with the categories of 'arising under' and 'arising in' proceedings."[10] *Id.* In fact, 28 U.S.C. § 157(b)(2) provides a list of sixteen categories of "arising under" and "arising in" proceedings. *See Stern v. Marshall*, 131 S. Ct. 2594, 2605, 180 L. Ed. 2d 475 (2011) (holding that "core proceedings are those that arise in a bankruptcy case or under Title 11[,]" and explaining that "[t]he detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters."). Importantly, this list explicitly provides that "motions to terminate, annul, or modify the automatic stay" are core proceedings. *See* 28 U.S.C. § 157(b)(2)(G). Because motions to lift the automatic stay are core proceedings, the Bankruptcy Court had full judicial power and authority to enter the Bankruptcy Court's Order.

---

[10] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Garner v. Bankplus*, 470 B.R. at 406. "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but...it is [a] non-core proceeding." *Id.*

Additionally, because the Bankruptcy Court had "arising under" jurisdiction to enforce the automatic stay pursuant to 28 U.S.C. § 1334(b), there is no need to analyze the Court's "related to" jurisdiction over the Lift Stay Motion. *See In re Essar Steel Minnesota, LLC*, 47 F.4th 193 (3d Cir. 2022) (discussing *In re Shenango Group, Inc.*, 501 F.3d 338, 342-44 (3d Cir. 2007), and holding that where a court finds one type of jurisdiction, it need not go further in its jurisdictional inquiry).

**2.    The merits of the State Court Action are irrelevant to the Bankruptcy Court's jurisdiction to enforce the automatic stay.**

Appellants confuse the ability of the Bankruptcy Court to enjoin Appellants, through the automatic stay, from pursuing further action in the State Court with the power of the Bankruptcy Court to exercise "final authority" jurisdiction over the merits of the State Court Action.

The relatedness of the merits of the State Court Action to the Bankruptcy Case is a ***separate and distinct*** inquiry from whether the Bankruptcy Court has authority to terminate or enforce the automatic stay.  [R. 3-2, p. 155].  Specifically, the hearing on a motion for relief from the automatic stay is (1) "merely a summary proceeding of limited effect," (2) "not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims," and (3) "merely a grant of permission from the court allowing the creditor to litigate its substantive claims elsewhere without violating the automatic stay."  *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 31-35 (1st Cir. 1994).  Recognizing that stay relief issues "arise

20

under" title 11, Congress has statutorily granted bankruptcy courts final authority, pursuant to 28 U.S.C. § 157(b)(2)(G), to determine motions to terminate, annul, or modify the automatic stay. 28 U.S.C. § 157(b)(2)(G). Because this Appeal concerns only the enforcement of the automatic stay, and because motions for relief from the automatic stay constitute core proceedings, it is unnecessary to assess the relatedness of the State Court Action itself to the Bankruptcy Case.[11]

To the contrary, in analyzing the removal and remand of the State Court Action, this Court determined whether the Archdiocese could invoke this Court's jurisdiction under 28 U.S.C. § 1334 by way of 28 U.S.C. § 1452(a) to handle and determine the underlying substantive claims made by Appellants. [R. 3-2, pp. 89-

---

[11] *See Amedisys, Inc. v. Nat'l Century Fin. Enters. (In re Nat'l Century Fin. Enters.)*, 423 F.3d 567, 574 n.5 (6th Cir. 2005):

> Amedisys argues that in order to find that the bankruptcy court had jurisdiction, this court must analyze whether the subject matter of the Louisiana action is "related to" the bankruptcy case. This would be the proper inquiry in evaluating whether the Louisiana action itself could be transferred to the bankruptcy court, in order for the bankruptcy court to hear the claims and submit proposed findings of fact to the district court. 28 U.S.C. § 157(c)(1); *cf. Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 489-91 (6th Cir. 1996) (setting forth factors to be used in determining whether a civil case is sufficiently "related to" the bankruptcy case to give the district court subject-matter jurisdiction over state law tort claims pending against nondebtor defendants). ***Here, because this appeal concerns only the enforcement of the automatic stay, and because the parties concede that a motion to enforce the stay constitutes a core proceeding, it is <u>unnecessary to assess the relatedness of the Louisiana action to the bankruptcy case</u>***.

92].  As such, the primary inquiry was whether this Court had jurisdiction over the

**merits** of the State Court Action.  This Court ultimately concluded that, for purposes

of **remand**, it lacked subject matter jurisdiction over the merits of the State Court

Action.  [R. 3-2, pp. 89-92].  Regardless of whether the Bankruptcy Court (or District

Court) can entertain and resolve the merits of the State Court Action, the Bankruptcy

Court has "arising under" jurisdiction pursuant to 28 U.S.C. § 1334(b) to enforce the

automatic stay and prevent parties, such as Appellants, from continuing to litigate

the merits of the State Court Action.  Indeed, the proceeding on the Lift Stay Motion

is independent and different from the proceeding on the Remand Motion.  A ruling

to the contrary would lead to absurd results, preventing the Bankruptcy Court from

entering orders on substantive rights created by federal bankruptcy law.

Of particular importance, Appellants intentionally misstate Fifth Circuit law

to support their erroneous contention that "bankruptcy courts cannot enjoin suits that

are not 'related to' a bankruptcy under 28 U.S.C. § 1334(b)."  [R. 8, p. 22].  First,

Appellants' reliance on *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 570 (5th

Cir. 1995) is misplaced and misleading.  In *Walker*, the debtor filed an adversary

proceeding in bankruptcy court against a creditor, alleging violations of the

automatic stay.  *In re Walker*, 51 F.3d at 564.  In turn, the creditor initiated a third-

party action against two non-debtor parties for contribution and indemnity for any

damages assessed against it.  *Id.* at 565.  The district court held that the bankruptcy

court lacked subject matter jurisdiction to hear and dispose of the creditor's third-party state law claims, and the creditor subsequently appealed. *Id.* The Fifth Circuit affirmed the judgment of the district court. *Id.* at 570-73.

*Walker* is entirely irrelevant to this appeal. *Walker* concerned the bankruptcy court's jurisdiction over a non-core proceeding: the creditor's third-party action against two non-debtors. Unlike the instant Appeal, *Walker* did not involve an analysis of the bankruptcy court's jurisdiction over the automatic stay or any other "core" proceeding. Accordingly, *Walker* is inapposite.

Next, the Appellants rely on *VSP Labs, Inc. v. Hillair Capital Invs., L.P. (In re PFO Global Inc.)*, 26 F.4th 245 (5th Cir. 2022) to urge that the automatic stay cannot apply unless claims are "related to" the bankruptcy case. Similar to *Walker*, *PFO Global* analyzed whether a bankruptcy court had jurisdiction over a non-core proceeding. Specifically, the Fifth Circuit considered whether the bankruptcy court had jurisdiction to prohibit one non-debtor from asserting state law claims against two other non-debtors. *In re PFO Global Inc.*, 26 F.4th at 252. Certainly, the facts of *PFO Global* are readily distinguishable from the instant case. There, the Fifth Circuit recognized that the proceeding was not core, and, therefore, the Court lacked "arising under" or "arising in" jurisdiction. Consequently, the *PFO Global* Court had to determine whether the non-core proceeding was "related to" the bankruptcy case. *Id.* Because enforcement of the automatic stay is a core proceeding, the Fifth

23

Circuit's analysis in *PFO Global* is inapplicable to this Appeal.

Lastly, Appellants consider *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995) pertinent to this Appeal. [R. 8, p. 25-27]. Appellants' analysis and application of *Zale*, however, is futile. There, similar to both *Walker* and *PFO Global*, the issue was whether the bankruptcy court had jurisdiction over non-core, third-party actions between non-debtors. *In re Zale Corp.*, 62 F.3d at 751 (quoting *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 926 (3d Cir.1990) ("Since we are determining the bankruptcy court's jurisdiction over a case between two non-debtors, we must examine the 'related to' language of Section 1334."). Contrarily, the instant Appeal involves the Bankruptcy Court's jurisdiction to enforce a substantive right created by federal bankruptcy law (i.e. the automatic stay). Again, because bankruptcy courts have "arising under" jurisdiction to hear matters related to the automatic stay, the relatedness of the merits of the State Court Action to the Bankruptcy Case is of no moment.

In sum, ignoring operative facts, Appellants merely cobble together favorable, cherry-picked *dicta* from irrelevant Fifth Circuit cases to construct a nonsensical argument that "the automatic stay can never apply to a suit if there is no 'related to' jurisdiction over that suit."[12] [R. 8, p. 27]. Simply put, any proceeding seeking relief

---

[12] At bottom, Appellants' real argument is that a "related to" limitation, which does not appear in 11 U.S.C. § 362(a), should be judicially engrafted therein. A close review of § 362(a) reveals that application of the automatic stay is not expressly limited by whether a federal court

from, or redress regarding, the automatic stay is a core proceeding that "arises under" the Bankruptcy Code.   As such, pursuant to 28 U.S.C. § 1334(b), the Bankruptcy Court had "arising under" jurisdiction to enforce the automatic stay.

**B.**   **Appellants have failed to show the Bankruptcy Court abused its discretion in enforcing the automatic stay.**

In a last-ditch effort to challenge the Bankruptcy Court's Order, Appellants argue that the doctrine of collateral estoppel prohibited the Bankruptcy Court from enforcing the automatic stay.   [R. 8, p. 28].   Appellants are mistaken.[13]   The Bankruptcy Court is not collaterally estopped by the Remand Order because the issues involved in the action concerning the Remand Motion are not identical, or even similar, to the issues involved in the Lift Stay Motion.   Additionally, Appellants have failed to prove any error or abuse of discretion in the Bankruptcy Court's findings.

---

can determine the merits of an underlying issue.  Instead, the statute specifically provides that the automatic stay prohibits "all entities" from doing certain statutorily specified things. Conspicuously, with the exception of, perhaps, § 362(a)(8) (inapplicable here), none of the statutorily specified actions from which entities are prevented from taking are circumscribed by a limitation that the bankruptcy court have the ability to rule on the underlying substantive merits before the automatic stay applies.

[13] As Appellants are aware, by the filing of a document seeking a "comfort order," it was incumbent upon them not to violate the automatic stay in the first place and to seek relief from the stay to the extent it prohibited them from filing claims against the Debtor.  Allowing Appellants to skate free of the statutory injunction by litigating a merits issue first and using the decision under the rubric of collateral estoppel improperly rewards litigants for ignoring the application of the automatic stay and delaying any request for relief from the automatic stay.

#101044875v1

1. **Appellants cannot establish the elements required to prove their collateral estoppel claim.**

Appellants' collateral estoppel argument is a red herring. Collateral estoppel precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). The party seeking to assert that an issue was already adjudicated bears the burden of proof. *Matter of Braniff Airways*, 783 F.2d 1283, 1289 (5th Cir. 1986) (stating that "the party seeking to assert that an issue was already adjudicated upon bears the burden of proving that contention" and that "if reasonable doubt exists as to what was decided in the first action, the doctrine of *res judicata* should not be applied").

Considering the first element of collateral estoppel, the issues at stake in the Lift Stay Motion are altogether different from the issues that were before this Court on the Remand Motion. Indeed, "[c]ourts have readily perceived that for purposes of preclusion, issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995); *see also Brister*

26

*v. A.W.I.*, 946 F.2d 350, 354 n.1 (5th Cir. 1991) (explaining that "[n]ot only the facts, but also the legal standard used to assess them, must be identical").

In connection with the Remand Motion, this Court analyzed and determined whether removal of the State Court Action was proper. The issue before the Court, therefore, was "whether Plaintiffs' state court suit is 'related to' Defendant's bankruptcy case under § 1334." [R. 3-2, p. 91]. In applying the test for "related to" jurisdiction, this Court analyzed if the anticipated outcome of the State Court Action (1) alters the rights, obligations, and choices of action of the Debtor, and (2) has an effect on the administration of the estate. [R. 3-2, p. 91]. The Court ultimately held it lacked subject matter jurisdiction to determine the merits of the State Court Action for purposes of remand. [R. 3-2, p. 92].

To the contrary, in relation to the Lift Stay Motion, the Bankruptcy Court considered the applicability of the automatic stay to the State Court Action. As such, the primary issue before the Bankruptcy Court was whether "cause" existed to justify modification of the automatic stay to allow the Appellants to proceed with the State Court Action. The Bankruptcy Court determined the automatic stay existed pursuant to 11 U.S.C. § 362(a)(1) and analyzed the factors set forth in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). As a result, the Bankruptcy Court denied the

Lift Stay Motion without prejudice.  [R. 3-2, pp. 212-13].[14]  Accordingly, the issues

involved in the action concerning the Remand Motion are not identical, or even

similar, to the issues involved in the Lift Stay Motion.

Further, considering the second and third collateral estoppel elements, the

issue at hand—the applicability of the automatic stay—was not litigated in the

remand action.  In fact, the only issue ligated in relation to the Remand Motion was

whether the District Court had jurisdiction over the merits of the State Court Action

under 28 U.S.C. § 1334 by way of 28 U.S.C. § 1452(a).  Nowhere in the Remand

Order does this Court reference the automatic stay.  Indeed, nowhere in the Remand

Order does it state that the automatic stay fails to apply to the State Court Action.  In

fact, Appellants cannot direct this Court to any lower court order that decided

whether the automatic stay applies to the State Court Action.  Thus, the Bankruptcy

Court was not collaterally estopped from considering and denying the Lift Stay

Motion.

Moreover, "[i]t is undisputed that *only* a bankruptcy court has jurisdiction to

terminate, annul or modify the automatic stay."  *In re Epstein*, 314 B.R. 591, 600

(Bankr. S.D. Tex. 2004);  *see also Cathey v. Johns-Manville Sales Corp.*, 711 F.2d

---

[14] Significantly, Appellants effectively consented to the Bankruptcy Court's Order. Prior to the continued hearing on the Lift Stay Motion, the Appellants filed the Status Report, stating that "they no longer intend to seek a preliminary injunction."  [R. 3-2, p. 199].  The Bankruptcy Court even noted, "[i]t sounds like the parties have reached a consensus."  [R. 3-2, p. 210].

#101044875v1

60, 62 (6th Cir. 1983) ("The legislative history of § 362(d) unambiguously identifies the bankruptcy court as the exclusive authority to grant relief from the stay.").  As such, this Court did not have jurisdiction to grant Appellants relief from the automatic stay.  Consequently, the Remand Order does not, and cannot, grant stay relief.

In fact, any determination by this Court effectively granting relief from the automatic stay would have been a violation of the automatic stay itself.  In *Wohleber v. Skurko (In re Wohleber)*, the Sixth Circuit Bankruptcy Appellate Panel held that a creditor violated the stay by allowing a state court judge to enter a contempt order against the debtor, and it remanded the matter for a determination of whether the creditor's counsel committed a similar violation. *See Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 572 (B.A.P. 6th Cir. 2019).  The *Wohleber* court reasoned that it was the creditor's obligation to stop the state court from violating the automatic stay even when the state court judge held that ***she believed that the automatic stay did not apply***. *Id.* at 575-76.  The *Wohleber* court continued that while "***courts have jurisdiction to determine whether their own proceedings are subject to the automatic stay . . . , litigants proceeding in this way 'proceed[] at [their] own risk***.'" *Id.* at 576 (quoting *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 940 (6th Cir. 1986)).

Accordingly, despite Appellants' interpretation of the Remand Order, they

29

were required to proceed at their own risk.  As a result, the Bankruptcy Court was not collaterally estopped by the Remand Order.

> **2.     The Bankruptcy Court did not abuse its discretion in holding that the automatic stay applies to the State Court Action.**

As discussed, pursuant to 28 U.S.C. § 1334(b), the Bankruptcy Court had "arising under" jurisdiction to hold that the automatic stay applies to the State Court Action.  The Bankruptcy Court expressly held that the admissions questions were drafted prior to the commencement of the Bankruptcy Case.  Appellants' counsel agreed, stating that the alleged discrimination "***goes back decades***…."  [R. 3-2, p. 179] (emphasis added).  In making this determination, the Bankruptcy Court relied on the sworn Declaration filed ***by the Appellants***, which stated that "[t]he admissions questions used on each School application were drafted before May 1, 2020, and have remain unchanged…." [R. 3-2, p. 202].[15]  As such, the Bankruptcy Court did not abuse its discretion in determining that, for purposes of U.S.C. § 362(a)(1), the State Court Action could have been brought before the Petition Date.

Importantly, the Bankruptcy Court's finding aligns with the purpose of the automatic stay under § 362(a)(1).  Section 362(a)(1) does not hinge its application upon a temporal requirement of pre-bankruptcy case commencement; instead, the

---

[15] Notably, Appellants attached the Declaration as an exhibit to their Status Report, which expressly stated that "Movants…no longer intend to seek a preliminary injunction."  [R. 3-2, pp. 200-03].

statute expressly states that the automatic stay applies to the commencement or continuation of any action that "was or ***could have been*** commenced" before the Petition Date.  11 U.S.C. § 362(a)(1) (emphasis added).  Hence, if an action "could have been" initiated prior to the bankruptcy case, further litigation of that cause of action is stayed by operation of § 362(a)(1).  This is precisely what the Bankruptcy Court found in the instant case, and this conclusion is fully supported by the record of this matter.[16]

Moreover, the Bankruptcy Court was within its rights to enforce the automatic stay because Appellants seek to exercise control over the estate through their requests for both injunctive relief and attorney's fees.  [R. 3-2, p. 30, ¶¶ 56, 60].  Indeed, it is well-established that a request for injunctive relief is considered "control over the property of the estate" under 11 U.S.C. § 362(a)(3).  *Newberry v. City of San Bernardino (In re City of San Bernardino)*, 558 B.R. 321, 329 (C.D. Cal. 2016) ("The Court concludes that Newberry's requested injunction still falls under § 362(a)(3)."); *In re Cinematronics, Inc.*, 111 B.R. 892 (Bankr. S.D. Cal. 1990) (holding defendants' actions of obtaining state court injunction and temporary restraining order against debtor violated the automatic stay because defendants were

---

[16] The fact that the State Court Action seeks injunctive relief is inconsequential. Commentators have long noted that the automatic stay of § 362(a)(1) "includes actions seeking ***injunctive*** or similar relief as well as actions seeking money judgments."  3 Collier on Bankruptcy ¶ 362.03[3] (16th ed. 2022) (emphasis added).

aware of the debtor's still pending Chapter 11 proceeding); *In re Jefferson Cty.*, 484 B.R. 427, 446-47 (Bankr. N.D. Ala. 2012) ("Any action that affects property of the debtor in a manner within the automatic stay's sphere, including a declaratory judgment action, is subject to § 362(a)(3)...."). The authorities cited by Appellants for the proposition that injunctive relief does not seek control over property of the estate are readily distinguishable.[17]   Universally, those cases involve express exceptions to the application of the automatic stay under § 362(b), inherent powers of a court to sanction litigants before it, or a fundamental lack of standing.

Importantly, Appellants further seek to obtain property of the Debtor through their requests for costs and attorney's fees.  Indeed, "an action that seeks to recover attorneys' fees from the debtor is unquestionably one that attempts to obtain possession of the property of the debtor, and is thus subject to stay under § 362(a)(3)." *Newberry*, 558 B.R. at 331 (quoting *In re City of Stockton, Cal.*, 499 B.R. 802, 807 (Bankr. E.D. Cal. 2013) ("[A] monetary award in the form of fees,

---

[17] *See, e.g., Dominic's Rest. of Dayton*, *Inc. v. Mantia*, 683 F.3d 757, 761 (6th Cir. 2012) (holding that the "defendant's petition for bankruptcy did not stay the contempt proceedings against him for his failure to obey court orders enjoining him from infringing on the plaintiff's trademark"); *United States v. ILCO, Inc.,* 48 B.R. 1016 (N.D. Ala. 1985) (holding RCRA § 7003 and CERCLA § 106 claims are excepted from stay under § 362(a)(4) as actions to enforce police or regulatory powers); *In re Colo. Altitude Training LLC*, No. 10-21951, 2012 Bankr. LEXIS 1276 (Bankr. D. Colo. Mar. 23, 2012) (holding that the automatic stay applied because the property affected by the underlying suit to enjoin certain post-petition conduct was previously assigned to movant, and as a result, the estate had no legal or equitable interest in that property); *Driggs v. Winters*, No. 3:05-cv-48, 2005 U.S. Dist. LEXIS 56501, at *12 (S.D. Miss. Feb. 18, 2005) (noting the automatic stay does not apply because the Debtor did "not claim any contractual or property interest of any nature whatsoever in any of the [property].").

costs, or otherwise leaves a potential for offending § 362(a)(3)….")).  Because the Petition seeks monetary compensation in the form of costs and attorney's fees, § 362(a)(3) clearly applies to automatically stay the State Court Action, and the Bankruptcy Court did not abuse its discretion in enforcing the automatic stay.

Lastly, as a general rule, the responsibility to enforce the automatic stay is placed on creditors, like Appellants. *See In re Wohleber*, 596 B.R. at 572.  "[T]o place the onus on the debtor,…to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory." *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989) (internal citations omitted).  Indeed, Appellants had an affirmative duty to enforce, and a burden not to violate, the automatic stay. *In re Wohleber*, 596 B.R. at 572-75.  In violation of that duty, Appellants filed the State Court Action.  As a result, to date, the Debtor has expended a considerable amount of time and estate resources on litigation related to the State Court Action. Certainly, the automatic stay is designed to prevent this form of estate depletion, especially at this critical stage in the Bankruptcy Case.  Appellants should not be rewarded for their violations and disregard of the judicial system.

Based on the foregoing, this Court must affirm the Bankruptcy Court's Order denying the Appellants' Lift Stay Motion.

33

# CONCLUSION

For the foregoing reasons, the Appellees respectfully request that this Court dismiss the above-captioned appeal or, in the alternative, affirm the Bankruptcy Court's Order.

Dated: February 27, 2023

Respectfully submitted,

<div style="display:flex">

*/s/ Laura F. Ashley*
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
LAURA F. ASHLEY (#32820)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8118
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: mmintz@joneswalker.com
Email: lashley@joneswalker.com

***Counsel for Appellee, The Roman Catholic Church of the Archdiocese of New Orleans***

*/s/ Brandon A. Brown*
PAUL D. STEWART, JR. (#24661)
WILLIAM S. ROBBINS (#24627)
BRANDON A. BROWN (#25592)
BROOKE W. ALTAZAN (#32796)
Stewart Robbins Brown & Altazan, LLC
301 Main St., Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Email: dstewart@stewartrobbins.com
Email: wrobbins@stewartrobbins.com
Email: bbrown@stewartrobbins.com
Email: baltazan@stewartrobbins.com

***Counsel for Appellee, The Official Committee of Unsecured Commercial Creditors***

</div>

#101044875v1

**CERTIFICATE OF SERVICE**

I hereby certify on February 27, 2023 that a true and correct copy of the foregoing Principal Brief has been served on all counsel of record by operation of the Court's electronic filing system.

/s/ *Laura F. Ashley*
LAURA F. ASHLEY

**CERTIFICATE OF COMPLIANCE**

1.   This document complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because it contains 8,716 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g); and

2.   This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: February 27, 2023        /s/ *Laura F. Ashley*
LAURA F. ASHLEY (#32820)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8118

***Counsel for Appellee, The Roman Catholic Church of the Archdiocese of New Orleans***

#101044875v1