No. 2:22-cv-04552-GGG-JVM
(On appeal from Bankruptcy Case No. 20-10846)

*United States District Court for the Eastern District of Louisiana*

MINOR CHILDREN,

*Appellants*

v.

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,
OFFICIAL COMMITTEE OF UNSECURED COMMERCIAL CREDITORS, AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

*Appellees*

———◆———

On appeal from the United States Bankruptcy Court
for the Eastern District of Louisiana
In re: Roman Catholic Church of the Archdiocese of New Orleans
Case no. 20-10846

———◆———

# REPLY BRIEF OF APPELLANT
_____

Chris Edmunds,
Chris Edmunds Law Office, LLC
LBSA: 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

# TABLE OF CONTENTS

**ARGUMENT** ...................................................................................................................4

   I.    The automatic stay cannot sensibly apply to an unrelated lawsuit. ..........4

   II.   This Court's rulings are final under collateral estoppel. .......................8

      A.    This Court has already determined that Appellants' suit does not implicate prepetition conduct, so the automatic stay cannot apply. .................10

      B.    This Court has determined that Appellants' suit does not seek "control over property of the estate," so the automatic stay cannot apply. ....................14

**CONCLUSION** ..............................................................................................................18

**CERTIFICATE OF COMPLIANCE** ...................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Amplifier Rsch. Corp. v. Hart*, 144 B.R. 693 (E.D. Pa. 1992)..........................................14

*Arnold v. Garlock Inc.*, 288 F.3d 234 (5th Cir. 2002) ......................................................9

*Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008) ....................12

*Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012) .......................14

*Driggs v. Winters*, No. 3:05cv48BN, 2005 WL 8172231 (S.D. Miss. Feb. 18, 2005) ......14

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985)....................5, 10

*Hunt v. Bankers Tr. Co.*, 799 F.2d 1060 (5th Cir. 1986) ...................................................9

*In re City of San Bernardino*, 558 B.R. 321 (C.D. Cal. 2016) ........................................17

*In re Execuair Corp.*, 125 B.R. 600 (Bankr. C.D. Cal. 1991) .........................................17

*In re Met-L-Wood Corp.*, 115 B.R. 133 (N.D. Ill. 1990)..................................................17

*In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012) .........................................................7

*In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299 (5th Cir. 2013) .........................................18

*In re TMT Procurement Corp.*, 764 F.3d 512 (5th Cir. 2014) ........................................... 16

*Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56 (D.N.J. 2000) .............................................. 14

*Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994) ...................................... 13

*Marquez-Marquez v. Gonzales*, 455 F.3d 548 (5th Cir. 2006) .......................................... 7

*Matter of Al Copeland Enterprises, Inc.*, 991 F.2d 233 (5th Cir. 1993) ............................ 17

*Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175 (5th Cir. 1986) ................... 18

*Matter of Karcredit, LLC*, No. 21-30649, 2022 WL 4103265 (5th Cir. Sept. 7, 2022) .... 18

*Matter of Lieb*, 915 F.2d 180 (5th Cir. 1990) ..................................................................... 7

*Matter of PFO Glob., Inc.*, 26 F.4th 245 (5th Cir. 2022) ........................................... 4, 6, 8

*Matter of Walker*, 51 F.3d 562 (5th Cir. 1995) ................................................................ 4, 5

*Matter of Wood*, 825 F.2d 90 (5th Cir. 1987) ................................................................. 4, 5

*Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) .............................................................. 8

*New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans*
   *Archdiocesan Cemeteries*, 56 F.4th 1026 (5th Cir. 2023) ............................................. 18

*Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990) ..................................... 9

*Rajala v. Gardner*, 709 F.3d 1031 (10th Cir. 2013) ........................................................... 7

*Reading Co. v. Brown*, 391 U.S. 471 (1968) .................................................................... 17

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ....................................................... 5

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020) ................................... 7

*You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-JDW-EAJ, 2012 WL
   12905185 (M.D. Fla. Oct. 24, 2012) ............................................................................. 14

**Statutes**

11 U.S.C. § 362 ..................................................................................................................... 8

11 U.S.C. § 541 ................................................................................................................... 16

28 U.S.C. § 1334 ........................................................................................................... 4, 6, 8

28 U.S.C. § 157 ..................................................................................................................... 6

28 U.S.C. § 1927 ................................................................................................................. 16

3

# **ARGUMENT**

The Archdiocese's response brief elides the central question in this appeal: how can the bankruptcy court have jurisdiction if this Court lacks jurisdiction under 28 U.S.C. § 1334? The Archdiocese does not cite even a *single example* of a court exercising automatic-stay authority over a suit that was deemed not "related to" a bankruptcy under 28 U.S.C. § 1334(c). Because this Court has held that Appellants' suit will "have [no] conceivable effect on the[] bankruptcy," *see Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987), Appellants are entitled to a comfort order so they can prosecute their lawsuit without fear of astronomical sanctions.

## I.     **The automatic stay cannot sensibly apply to an unrelated lawsuit.**

Bankruptcy courts have no "power beyond that granted in 28 U.S.C. § 1334." *Matter of Walker*, 51 F.3d 562, 570 (5th Cir. 1995). As noted in the Opening Brief, the Fifth Circuit has affirmed on two occasions that the automatic stay cannot apply to a suit unless the suit is, at a minimum, "related to" the bankruptcy under 28 U.S.C. § 1334(c). *Matter of Walker*, 51 F.3d at 569; *Matter of PFO Glob., Inc.*, 26 F.4th 245, 252 (5th Cir. 2022). Because this Court lacks any power over Appellants' suit, the bankruptcy court likewise has no power to enjoin it. *See In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) ("We have never held that § 157 confers jurisdiction separate and apart from that existing under § 1334.").

Nowhere in its brief does the Archdiocese dispute that "the text of Section 362 contains no jurisdictional grant," or that it does not "'speak in jurisdictional terms or in any way refer to the jurisdiction of' the bankruptcy courts." Opening Br. at 21 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 162 (2010)). Instead, it asks this Court to hold that Section 362 grants bankruptcy courts some sort of free-floating jurisdiction to enjoin lawsuits that that "have [no] conceivable effect on the[] bankruptcy." *See Matter of Wood*, 825 F.2d at 93. That is an absurd proposition, and this Court should flatly reject it.

Critically, the Archdiocese does not dispute that "related to" jurisdiction "is broader than the automatic stay." Opening Br. at 24–27. Indeed, it concedes that "[t]he relatedness of the merits of the State Court Action … is a *separate and distinct* inquiry" from the applicability of the automatic stay Resp. Br. at 20. Appellants agree. A lawsuit may be "related to" a bankruptcy under 28 U.S.C. § 1334, but not subject to the automatic stay under 11 U.S.C. § 362. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 994–96 (5th Cir. 1985). But the reverse cannot be true. Tellingly, **the Archdiocese cites <u>*no examples*</u> of an automatic stay being applied to a suit that had been deemed not "related to" the bankruptcy**. The Court need not go any further. Because there is no "related to" jurisdiction, and because the scope of the automatic stay is narrower than "related to" jurisdiction, the automatic stay cannot apply to Appellants' suit. It is as simple as that.

5

The Archdiocese also falters in trying to distinguish *Walker* and *PFO Global*, by claiming that they involved "non-core" proceedings while Appellants' lawsuit is a "core" proceeding. That is not correct. Like the suits in *Walker* and *PFO Global*, Appellants' lawsuit is neither a "core" proceeding nor a "non-core proceeding." It is a *completely unrelated* proceeding.

Under Section 157 of the Bankruptcy Code, there are "core" proceedings and "non-core proceedings." A "core" proceeding "arises under" the bankruptcy, 28 U.S.C. § 157(b)(1), while a non-core proceeding is one "that is not a core proceeding *but that is otherwise related* to a case under title 11," *id.* at § 157(c)(1) (emphasis added). Thus, to qualify as either a core or non-core proceeding, the suit must at least be "related to" the bankruptcy under 28 U.S.C. § 1334(c). Because Appellants' suit is not "related to" the Archdiocese's bankruptcy, it is neither a core nor a non-core proceeding. That is, the bankruptcy court can neither "hear and determine" Appellants' suit, *see* § 157(b)(1), nor "submit proposed findings of fact and conclusions of law to the district court," *see* § 157(c)(1).

The Archdiocese is conflating the *underlying lawsuit*—which is an unrelated proceeding—with the *stay-relief* proceedings—i.e., Appellants' motion for a comfort order and the related filings—which is a "core proceeding." *See* Resp. Br. at 21 ("Because this Appeal concerns only the enforcement of the automatic stay, and because motions for relief from the automatic stay constitute core proceedings,

6

it is unnecessary to assess the relatedness of the State Court Action itself to the Bankruptcy Case."). The fact that Appellants' motion for a comfort order and the related filings constitute a "core" proceeding is completely irrelevant. The question in this appeal is whether the bankruptcy court has jurisdiction to enjoin Appellants' *lawsuit*—not whether it has jurisdiction to consider Appellants' *motion*.

For reasons that are not clear,[1] the Archdiocese dedicates five pages to the undisputed proposition that "Any proceeding to determine the scope and applicability of the automatic stay 'arises under' title 11." Resp. Br. at 16–20. Appellants fully agree that the bankruptcy court had the jurisdiction to hear their motion for a comfort order to determine the "scope and applicability of the stay." *See id*. They said so in their jurisdictional statement. Opening Br. at 6 (stating that bankruptcy courts have jurisdiction to issue comfort orders). And it is axiomatic that courts have jurisdiction "to determine [their] own jurisdiction." *See Marquez-Marquez v. Gonzales*, 455 F.3d 548, 554 (5th Cir. 2006). Appellants simply disagree with the bankruptcy court's ultimate conclusion that the automatic stay applies to their suit. And that conclusion is immediately appealable.[2]

---

[1] The Archdiocese incorrectly asserts that Appellants "insist[] that the Bankruptcy Court does not have jurisdiction to hear and determine the Lift Stay Motion." Resp. Br. at 17 n.6. Why would Appellants argue that the bankruptcy court lacked jurisdiction to hear the motion for a comfort order that *Appellants themselves* filed? That makes no sense.

[2] *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020); *Matter of Lieb*, 915 F.2d 180, 185 n.3 (5th Cir. 1990); *In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012); *Rajala v. Gardner*, 709 F.3d 1031, 1035 (10th Cir. 2013).

7

Finally, the Archdiocese argues that it is "irrelevant" that this Court lacks "jurisdiction to adjudicate the merits." Resp. Br. at 14, 20–25. But this Court doesn't merely lack jurisdiction over the "merits" of Appellants' suit. It lacks *any* jurisdiction over the suit, including the jurisdiction to stay proceedings in state court. 28 U.S.C. § 1334. The Archdiocese is confusing Section 1334's *abstention* provisions with its *jurisdictional* provisions. A federal court lacks the power to "adjudicate the merits" of an action if mandatory abstention provision, 28 U.S.C. § 1334(c)(2), but it still has subject matter *jurisdiction* over the action if the action is "related to" the bankruptcy, *id.* at § 1334(c). Such jurisdiction may include the authority to stay the state-court action. Opening Br. at 24–27 (citing 11 U.S.C. §§ 105, 362). But without "related to" jurisdiction, a court has no authority whatsoever. *See Matter of PFO Glob., Inc.*, 26 F.4th at 252 (holding that bankruptcy court needed "related to" jurisdiction "to prevent [a party] from asserting state law claims in state court" against the debtor); *Matter of Zale Corp.*, 62 F.3d 746, 755–57 (5th Cir. 1995) (holding that bankruptcy court exceeded its authority under 11 U.S.C. § 105 when it approved a settlement purporting to enjoin suits between non-debtors, because it lacked "related to" jurisdiction over those suits).

## II. This Court's rulings are final under collateral estoppel.

Broadly speaking, the automatic stay applies only to actions pursuing prepetition debts, or actions pursuing control over property of the estate. 11 U.S.C.

8

§ 362. In its remand order, this Court held that Appellants' suit seeks neither. But the bankruptcy disregarded these rulings, even though it was bound to respect them under the doctrine of collateral estoppel. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Matter of Swate*, 99 F.3d 1282, 1289 (5th Cir. 1996).

The Archdiocese makes a bizarre argument, claiming that "only the bankruptcy court" has the authority to determine the applicability of the stay, and that "any determination by this Court effectively granting relief from the automatic stay would have been a violation of the automatic stay itself." Resp. Br. at 29. But it is well established that district courts "retain jurisdiction to determine the applicability of the [automatic] stay to litigation pending before them." *Arnold v. Garlock Inc.*, 288 F.3d 234, 236 (5th Cir. 2002). In other words, "[w]hether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law *within the competence of both the court within which the litigation is pending ... and the bankruptcy court*." *Hunt v. Bankers Tr. Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) (emphasis added).

This Court was "fully aware of the automatic stay" when it entered the remand order, and "[a] court's determination of its own jurisdiction … generally may not be challenged in a collateral proceeding." *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) (noting that "the district court … implicitly concluded that its dismissal was consistent with [the automatic stay's] terms"). Tellingly, the

Archdiocese fails to address *Picco*, *Hunt*, or *Arnold*. Instead, it cites a district court decision that states: "only a bankruptcy court has jurisdiction to terminate, annul or modify the automatic stay." *In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. 591, 600 (Bankr. S.D. Tex. 2004). Appellants agree that only a bankruptcy court can "terminate, annul, or modify" an automatic stay that *is applicable*. But the Archdiocese conveniently omits the very next sentence: "a state court has jurisdiction *to unilaterally decide whether the automatic stay applies*, and thus *bind the bankruptcy court* by that decision through *res judicata*." *Id.* (emphasis added). As explained below and in the Opening Brief, this Court has already "implicitly" determined that the automatic stay does not apply. *See Picco*, 900 F.2d at 850.

### A. This Court has already determined that Appellants' suit does not implicate prepetition conduct, so the automatic stay cannot apply.

The automatic stay "simply does not apply to post-bankruptcy events." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985). This Court ruled that Appellants' lawsuit complains only of "current conduct," doc. 3-2 at 89–92, but the bankruptcy court disregarded this ruling and concluded that the automatic stay applies because the suit "could have been brought" before the Archdiocese filed for bankruptcy. Doc. 3-2 at 92, 209. This Court's conclusion that Appellants' suit challenges only "current conduct" is final and unappealable, 28 U.S.C. § 1447(d), and the bankruptcy court cannot second-guess it.

Notably, the Archdiocese does not deny that the bankruptcy court's factual conclusion is nonsensical. How could Appellants bring a suit in May 2020 to enjoin conduct occurring in August 2022? Without the help of Marty McFly and Doc Brown, Appellants could not have filed a suit seeking to enjoin conduct that had not yet occurred.

The Archdiocese maintains that collateral estoppel does not apply because the issue is not identical and/or that the issue was not litigated. But the issues are plainly identical. Just compare the remand order with the bankruptcy court's ruling.

Here is this Court's order:

> Defendant argues the Court's "related to" jurisdiction over the state court suit is *proper because Plaintiffs' Petition conceivably challenges conduct that occurred prior to the bankruptcy proceeding, not just "post-petition" acts*. ... A close reading of Plaintiffs' Petition makes it evident that they seek prospective injunctive relief for Defendant's current conduct. *Plaintiffs are not pursuing recompense for prior transgressions*, but instead are attempting to stop Defendant's alleged discrimination going forward.

Doc. 3-2 at 90–92 (emphasis added).

And here is the bankruptcy court:

> The Court does find that the stay actually exists pursuant to 362(a)(1) because ... *this is a suit that could have been brought ... against the Archdiocese before the petition date*.

Doc. 3-2 at 209 (emphasis added).

The Archdiocese tries to evade the fact that the issues are identical by framing the "issues" at an unreasonably high level of generality:

> In connection with the Remand Motion, this Court analyzed and determined whether removal of the State Court Action was proper. The issue before the Court, therefore, was "whether Plaintiffs' state court suit is 'related to' Defendant's bankruptcy case under § 1334." …. To the contrary, in relation to the Lift Stay Motion, the Bankruptcy Court considered the applicability of the automatic stay to the State Court Action. As such, the primary issue before the Bankruptcy Court was whether "cause" existed to justify modification of the automatic stay…

Resp. Br. at 27. The fact that the remand order and the bankruptcy court's order were considering different motions governed by different legal standards does not change the fact that the *issue considered*—i.e., whether Appellants' suit challenges prepetition conduct or postpetition conduct—is identical.

The Archdiocese also claims that the issue was "not litigated," because this Court did not mention the automatic stay. Resp. Br. at 28. Incorrect. The issue litigated was whether Appellants' suit "conceivably challenges conduct that occurred prior to the bankruptcy proceeding." Doc. 3-2 at 90–92. This Court ruled that the answer was no, doc. 3-2 at 92, and that ruling compels the conclusion that the automatic stay does not apply, because the automatic stay "does not apply to claims that arise post-petition, *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008). Even if the bankruptcy court disagrees with this Court's judgment, it was nonetheless bound to follow it.

With no legal support to stand on, the Archdiocese resorts to deceptively editing the transcript. The Archdiocese writes: "The Bankruptcy Court expressly held that the admissions questions were drafted prior to the commencement of the

Bankruptcy Case. Appellants' counsel agreed, stating that the alleged discrimination "***goes back decades***…." Resp. Br. at 30. This is rank dishonesty bordering on ethical misconduct. Here's what the transcript actually says:

> THE COURT: When did that pattern start?
> MR. EDMUNDS: **I have no idea**. … I'm **assuming**, your Honor, that it goes back decades. But we are complaining in our case – we're not seeking any damages to redress past wrongs and in fact, again, Judge Guidry's order addresses this.

Doc. 3-2 at 179–80. Appellants' counsel said he has "no idea" when the questions were drafted, but the Archdiocese disingenuously left out these words. In any event, the off-hand assumptions of counsel at oral argument are irrelevant. To determine whether a claim could have been brought prepetition, the Court must look at the *face of the petition*. And nothing in the petition alleges prepetition conduct.

More importantly, even assuming the discriminatory questions were drafted before May 2020, there is no indication that *these particular litigants*—i.e., the Appellants—could have filed suit based on those questions. To have a prepetition "claim," the Fifth Circuit requires a "prepetition relationship." *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994). But the Archdiocese identifies no "contact, exposure, impact, or privity, between [its] prepetition conduct and the [Appellants]." *See id.* If the Archdiocese has, in fact, been discriminating against children with disabilities for decades, this has no legal significance to *Appellants*, who had no "prepetition relationship" with Archdiocesan schools. *See*

13

*id.* (holding that there was no prepetition claim because the record was "devoid of any evidence of any pre-petition contact, privity, or other relationship").

### B. This Court has determined that Appellants' suit does not seek "control over property of the estate," so the automatic stay cannot apply.

Actions for injunctive relief to prevent ongoing wrongdoing of debtors are not subject to the automatic stay. Opening Br. at 31–33. The Archdiocese barely contests this well-established principle, relegating its counterargument to one sentence and a footnote. It contends that these cases "involve express exceptions to the application of the automatic stay under § 362(b), inherent powers of a court to sanction litigants before it, or a fundamental lack of standing." Resp. Br. at 32. Not so. Though Sixth Circuit's decision in *Mantia* happened to involve contempt proceedings, nothing in the decision was premised on the "inherent powers of a court." Instead, the court held that the automatic stay cannot bar actions to prevent ongoing torts. *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 761 (6th Cir. 2012) ("Powers's commission of a tort is not protected by the Bankruptcy Code."). Appellants cite myriad other cases that say the same.[3] On this basis alone,

---

[3] *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-JDW-EAJ, 2012 WL 12905185, at *2 (M.D. Fla. Oct. 24, 2012) ("[T]he commission of torts … [is] not protected by the Bankruptcy Code."); *Driggs v. Winters*, No. 3:05cv48BN, 2005 WL 8172231, at *5 (S.D. Miss. Feb. 18, 2005) (automatic stay did not apply to claim seeking "to enjoin … post-petition infringing conduct"); *Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56, 59 (D.N.J. 2000) (automatic stay did not apply to injunctive relief "to prevent [defendant] from infringing on its patent[]"); *Amplifier Rsch. Corp. v. Hart*, 144 B.R. 693, 694–95 (E.D. Pa. 1992) (automatic stay inapplicable because plaintiff "s[ought] to … enjoin … the commission of torts").

14

the Court can conclude that, even assuming the automatic stay could apply to an unrelated lawsuit, the scope of the stay does not cover *this* lawsuit.

Alternatively, the Court can easily conclude that its ruling in the remand order compels the conclusion that the automatic stay does not apply. The automatic stay applies only if an action "seeks to obtain or exercise control over the property of the debtor." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987). And this Court rejected the Archdiocese's argument that the suit seeks to exercise control over estate property. Doc. 3-2 at 92 (rejecting the "conten[tion] that [Appellants'] Petition could affect its bankruptcy estate because" the "admissions applications … *constitute property of the estate*") (emphasis added). Accordingly, the issue is settled under collateral estoppel, and the Archdiocese cannot challenge it.

Troublingly, the Archdiocese *again* tries to end-run this conclusive ruling, with the same arguments this Court has already rejected. For example, this Court rejected the Archdiocese's contention that "paying the attorney's fees and costs demanded – would consume estate resources that could otherwise be used to fund a plan of reorganization and pay creditors." Doc. 3-2 at 91. But the Archdiocese vexatiously argues that Appellants "seek to obtain property of the Debtor through their requests for costs and attorney's fees." Resp. Br. at 32. This argument is barred

15

by collateral estoppel. *See Matter of Swate*, 99 F.3d at 1289. This type of vexatious conduct can and should be met with sanctions under 8 U.S.C. § 1927.[4]

Putting aside collateral estoppel, the argument has no merit. A request for attorney's fees under fee-shifting provisions is not an attempt to exercise control over "property of the estate," because it is not a "prepetition" claim and thus has no connection to the *estate*. 11 U.S.C. § 541(a) (defining estate property as "all legal or equitable interests of the debtor in property *as of the commencement of the case*"). Any claim for attorney's fees will not become ripe unless and until Appellants prevail in the litigation, and any such claim obviously could not have existed "as of the commencement of" the bankruptcy case. *See id.* Nor does a request for attorney's fees, which is wholly contingent on prevailing in the action, derive from any prepetition legal interest or contract. *See In re TMT Procurement Corp.*, 764 F.3d 512, 524–25 (5th Cir. 2014) (holding that Section 541 does not include property "not created with or by property of the estate, … not acquired in the estate's normal course of business, and … not traceable to or arise out of any prepetition interest included in the bankruptcy estate").

---

[4] *See, e.g.*, *Coghlan v. Starkey*, 852 F.2d 806, 818 (5th Cir. 1988) (noting that "28 U.S.C. § 1927 is used in tandem with" FRAP 38 and FRAP 11 to hold to counsel "personally" liable for vexatious conduct, as attorneys have an ethical obligation "to limit litigation to contentions 'well grounded in fact and ... warranted by existing law'"); *Macklin v. City of New Orleans*, 300 F.3d 552, 554 (5th Cir. 2002) (imposing sanctions where party "[r]epeatedly ignor[ed] the unfavorable precedent, even after being alerted to it by a district court ruling").

16

If Appellants are awarded attorney's fees before the confirmation of the Archdiocese's Chapter 11 plan, the award would be an "administrative expense" under Section 503(b) of the Bankruptcy Code. *See Reading Co. v. Brown*, 391 U.S. 471, 482 (1968) (holding that "tort claims arising during an arrangement" were "actual and necessary expenses of the arrangement rather than debts of the bankrupt"). The *Reading* decision has been extended to "monetary harm" that arises post-petition. *See Matter of Al Copeland Enterprises, Inc.*, 991 F.2d 233, 240 (5th Cir. 1993) (applying *Reading* and holding that a company's "post-petition decision" not to pay Texas sales tax and interest "resulted in monetary harm to the State" and was an "administrative expense" under Section 503(b)). And most relevant here, "[s]everal courts have applied *Reading* to award attorney's fees" arising post-petition. *In re Met-L-Wood Corp.*, 115 B.R. 133, 136 (N.D. Ill. 1990); *see also In re Execuair Corp.*, 125 B.R. 600, 604 (Bankr. C.D. Cal. 1991) ("This Court holds that the attorneys' fees and costs ordered by the District Court for post-petition prosecution of the contempt action are administrative claims.").

The Archdiocese cites an out-of-circuit district court decision for the incorrect proposition that a request for prevailing-party attorney's fees affects property of the estate. *In re City of San Bernardino*, 558 B.R. 321, 331 (C.D. Cal. 2016). But *San Bernardino* is inapposite, because the plaintiff in that case could have "s[ought] declaratory and injunctive relief *in an adversary proceeding before the bankruptcy*

17

*court.*" *Id.* By contrast, Appellants' lawsuit is not related to the bankruptcy, so the bankruptcy court would have no jurisdiction to conduct an "adversary proceeding." *See Matter of Karcredit, LLC*, No. 21-30649, 2022 WL 4103265, at *2 (5th Cir. Sept. 7, 2022) (the "only path to jurisdiction" for an "adversary proceeding" is 28 U.S.C. § 1334); *In re Spillman Dev. Grp.*, 710 F.3d 299, 303–05 (5th Cir. 2013). Moreover, the analysis in *San Bernardino* is directly at odds with the Fifth Circuit's precedent. *Compare In re City of San Bernardino*, 558 B.R. at 331 (holding that allowing action for declaratory relief and attorney's fees "would introduce an unpredictable variable into the reorganization efforts" because it would "forc[e] the debtor to spend an unpredictable amount of money to defend against the lawsuit"), *with Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1186 (5th Cir. 1986) (rejecting argument that being forced to "expend funds" to defend a lawsuit implicated the automatic stay because "almost everything costs something").[5]

## **CONCLUSION**

For the reasons above, this Court should vacate the bankruptcy court's order and issue a "comfort order" confirming that the scope of the automatic stay does not include Appellants' lawsuit, because it is unrelated to the bankruptcy.

---

[5] It should also be noted that the Archdiocese never invoked the automatic stay in the post-petition lawsuit seeking access to its cemeteries, even though the complaint expressly sought attorney's fees. *See New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026 (5th Cir. 2023). Instead, it chose to defend the suit on the merits. *See id.*

March 9, 2023

  /s/ *Chris Edmunds*

Chris Edmunds,
Counsel for Appellants
LBSA: 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

## **CERTIFICATE OF COMPLIANCE**

  Undersigned counsel certifies that Appellants' reply brief complies with Rule 8015(h) because, excluding the parts exempted under Rule 8015(g), it contains 3,961 words. Fed. R. Bankr. P. 8015.

  */s/ Chris Edmunds*
Chris Edmunds
Attorney for Appellants