UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE ROMAN CATHOLIC CHURCH
OF THE ARCHDIOCESE OF NEW
ORLEANS

CIVIL ACTION

NO. 22-4552

SECTION M (1)

**OPINION**

Before the Court is an appeal of the bankruptcy court's October 25, 2022 order denying a motion filed by a putative class of plaintiffs who are school-age children with disabilities in the New Orleans area ("Appellants"), in which they sought a "comfort order" or, alternatively, relief from the automatic stay.[1] Appellants submit an opening brief in support of their appeal.[2] The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese"), the debtor in the bankruptcy case from which this appeal arises, responds in opposition,[3] and Appellants reply in further support of their appeal.[4] Having considered the parties' briefs, the record, and the applicable law, the Court reverses the decision of the bankruptcy court upon finding that the stay does not apply to Appellants' claims.

**I.      BACKGROUND**

This matter concerns an appeal of the bankruptcy court's October 25, 2022 order holding that Appellants' state-court case was subject to the automatic bankruptcy stay imposed by 11 U.S.C. § 362.[5] Appellants and putative class representatives are minor children with disabilities

---

[1] R. Doc. 1.
[2] R. Doc. 8.
[3] R. Doc. 11.
[4] R. Doc. 12.
[5] R. Doc. 3-2 at 210, 212.

whose parents seek to send them to New Orleans-area Catholic schools that are either directly or indirectly controlled by the Archdiocese.[6]  They allege that, as part of the admissions process, many of these schools request prospective students to provide information about their disabilities, which, Appellants contend, is a "violation of state law."[7]  Because of these questions, Appellants allege that they have been unable to enroll at an area Catholic school.[8]  On August 15, 2022, Appellants filed a class action lawsuit (which they later amended) against the Archdiocese in state court seeking to enjoin the Archdiocese from engaging in future discriminatory admissions practices.[9]  In their complaint, Appellants expressly disclaim entitlement to monetary damages for past discriminatory conduct.[10]  On August 31, 2022, the Archdiocese removed the action to federal district court pursuant to 28 U.S.C. § 1452(a) based on the court's "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b) because of the Archdiocese's pending chapter 11 bankruptcy case, which was initiated in May 2020.[11]  Appellants subsequently filed a motion to remand, arguing that because their claims are limited to enjoining the Archdiocese from prospective discriminatory conduct, they necessarily cannot have an effect on property of the bankruptcy estate and so the dispute is not "related to" the chapter 11 bankruptcy case.[12]  During the pendency of their motion to remand before the district court, however, Appellants also filed a motion for a "comfort order" before the bankruptcy court in an effort to receive judicial confirmation that their action against the Archdiocese was not subject to the automatic stay.[13]

---

[6] R. Doc. 3-4 at 291.
[7] *Id.* at 290.
[8] *Id.* at 292.
[9] *Id.* at 290-97.
[10] *Id.* at 290, 296.
[11] R. Doc. 3-2 at 20-21.
[12] *Id.* at 42-44.
[13] *Id.* at 7. "The origins of the term 'comfort order' are elusive, but comfort orders are generally sought as declarations from a bankruptcy judge that the automatic stay has been terminated or else never came into existence with regard to some element of [a] bankruptcy case." *In re Ross*, 2019 WL 480269, at *3 (Bankr. N.D. Miss. Feb. 6, 2019); *see also In re Ermi*, 2006 WL 2457144, at *2 (Bankr. N.D. Ohio Aug. 3, 2006) ("Comfort orders are a

On October 3, 2022 (at which time Appellants' motion for comfort order was still pending before the bankruptcy court), the district court remanded the action to state court after concluding that it did not have "related to" subject-matter jurisdiction because Appellants only sought "prospective injunctive relief for [the Archdiocese]'s current conduct," and so the action could not affect property of the bankruptcy estate.[14] Thereafter, on October 25, 2022, the bankruptcy court held a hearing on Appellants' motion for comfort order. During the hearing, the bankruptcy court found that (1) it had jurisdiction under 28 U.S.C. § 1334 to consider the motion and (2) that the automatic stay applies to Appellants' action "because this is a ... suit that could have been brought ... before the [bankruptcy] petition date."[15] Thus, at the October 25, 2022 hearing, the bankruptcy court denied Appellants' motion for comfort order and enforced the automatic stay against their claims, which is the order presently on appeal. After Appellants appealed the bankruptcy court's denial of their motion for a comfort order, the Archdiocese filed a motion to dismiss the appeal, arguing that dismissal is proper because this Court lacks jurisdiction to consider it, Appellants lack bankruptcy standing to appeal the order at issue, and the underlying state-court action is moot.[16] This Court, in its June 23, 2023 Opinion, rejected those arguments and confirmed that it had jurisdiction to hear the appeal.[17] It now turns to the merits.

## II.     PENDING APPEAL

On appeal, Appellants argue that, once the district court concluded that it did not have "related to" subject-matter jurisdiction over the case and remanded it back to state court, the

---

mechanism by which a creditor seeks to protect itself from the potential ramifications of acting in violation of the automatic stay by obtaining a cloak of cover from the court."). "The power to issue comfort orders is encompassed within Section 105 of the Bankruptcy Code, which supplies bankruptcy courts with the authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *In re Hill*, 364 B.R. 826, 828 (Bankr. M.D. Fla. 2007) (quoting 11 U.S.C. § 105(a)).

[14] R. Doc. 3-2 at 92.
[15] *Id.* at 209.
[16] R. Doc. 5.
[17] R. Doc. 14.

bankruptcy court did not have jurisdiction to find that the automatic stay applied to Appellants' case.[18] Even assuming that the bankruptcy court had jurisdiction to take such action, say Appellants, it still erred in concluding that the automatic stay applies to claims arising out of post-petition conduct.[19] Additionally, Appellants contend that their claims do not trigger the automatic stay because the injunctive relief they are seeking will not exert control over property of the bankruptcy estate.[20]

In opposition, the Archdiocese argues that the bankruptcy court did have jurisdiction to consider and rule on Appellants' motion for comfort order, because a proceeding to determine the "applicability of the automatic stay," as a substantive right created by the Bankruptcy Code, necessarily arises under title 11.[21] Further, the Archdiocese submits that the bankruptcy court did not abuse its discretion in concluding that the automatic stay applies to Appellants' claims, as the record evidence demonstrates that the allegedly discriminatory admissions applications were written prepetition and, thus, the action could have been commenced before the Archdiocese filed for bankruptcy.[22] The Archdiocese also contends that the bankruptcy court did not err in concluding that the automatic stay applies to Appellants' claims because their request for costs and attorney's fees itself constitutes an attempt to exercise control over property of the bankruptcy estate.[23]

In reply, Appellants reassert that the automatic stay cannot apply to their claims because the district court already concluded that the action was not related to the Archdiocese's bankruptcy case.[24] And because the district court found that jurisdiction did not exist under § 1334(b), say

---

[18] R. Doc. 8 at 16, 19-39.
[19] *Id.* at 17, 27-30.
[20] *Id.* at 17-18, 30-34.
[21] R. Doc. 11 at 23-32.
[22] *Id.* at 37-39.
[23] *Id.* at 38-40.
[24] R. Doc. 12 at 4-8.

Appellants, the Archdiocese's attempt to relitigate that determination, through its opposition to the comfort order, is barred by collateral estoppel.[25] Finally, Appellants argue that, even assuming the bankruptcy court could impose the automatic stay against their claims, it was error to do so because their suit only implicates post-petition conduct and does not seek control over property of the bankruptcy estate.[26]

### III. LAW & ANALYSIS

Appellants maintain that the bankruptcy court erred when it concluded (1) that it had jurisdiction to enforce the automatic stay against Appellants' claims, notwithstanding the district court's determination that the claims are not "related to" the Archdiocese's bankruptcy case; and (2) that Appellants' claims are subject to the automatic stay.[27] The Court will consider each issue in turn.

#### A. The Bankruptcy Court's Jurisdiction Over Appellants' Motion for Comfort Order

The bankruptcy court concluded that it had subject-matter jurisdiction under § 1334 to consider and rule on Appellants' motion for comfort order.[28] This Court, sitting in its capacity as an appellate court, reviews "questions of subject matter jurisdiction *de novo*."[29] *In re Bissonnet Invs. LLC*, 320 F.3d 520, 522 (5th Cir. 2003). "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Pursuant to 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." "The district courts may, in turn, refer 'any or all proceedings arising under

---

[25] *Id.* at 8-16.
[26] *Id.* at 13-18.
[27] R. Doc. 8 at 7-8.
[28] R. Doc. 3-2 at 209.
[29] The Court, in its June 23, 2023 Opinion, established its jurisdiction over Appellants' appeal. R. Doc. 14 at 8 & n.28.

5

title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district.'" *Celotex*, 514 U.S. at 307 (quoting 28 U.S.C. § 157(a)). Section 157, in addition to authorizing referral to the bankruptcy court, outlines the scope of the bankruptcy court's powers once the district court has referred a case or proceeding, but it does not establish an independent basis for jurisdiction beyond § 1334. *See In re Walker*, 51 F.3d 562, 569-70 (5th Cir. 1995) ("Thus, while § 157 gives bankruptcy courts the power to hear some cases, and the power to decide certain cases, it does not give those courts the power to hear cases that the district court could not hear."); *In re Bass*, 171 F.3d 1016, 1025 (5th Cir. 1999) ("We have never held that § 157 confers jurisdiction separate and apart from that existing under § 1334."). "[T]he extent to which a bankruptcy court may adjudicate a referred matter depends on whether the proceeding is considered to be 'core' or 'non-core.'" *In re Wilborn*, 609 F.3d 748, 752 (5th Cir. 2010). The bankruptcy court may fully adjudicate core proceedings, but it is limited to issuing "proposed findings of fact and conclusions of law to the district court" for non-core proceedings. 28 U.S.C. § 157(b)(1), (c)(1). *See also Wilborn*, 609 F.3d at 752. The non-exhaustive list of core proceedings contained in § 157(b)(2) includes "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(G).

For purposes of determining whether bankruptcy jurisdiction exists – that is, whether the proceeding arises under title 11, arises in title 11, or is related to a case under title 11 – the classification of a proceeding as "core" is helpful, as core proceedings have been equated with those "arising under" or "arising in" title 11. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 476 (2011) ("Under our reading of the statute, core proceedings are those that arise in a bankruptcy case or under Title 11."); *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987) (observing that "section 157 apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings" to conclude that "the phrases 'arising under' and 'arising in' are helpful indicators

of the meaning of core proceedings"). Proceedings arise under title 11 when they "involve a cause of action created or determined by a statutory provision of title 11." *Wood*, 825 F.2d at 96. Similarly, proceedings "arise in" title 11 when they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 97; *see also In re Galaz*, 665 F. App'x 372, 375 (5th Cir. 2016) (quoting same). Relevant to the automatic stay imposed by title 11, the Fifth Circuit has observed:

> The automatic stay provision of section 362 is a key component of federal bankruptcy law. In a chapter 11 reorganization proceeding, the stay prevents the dissipation or diminution of the bankrupt's assets while rehabilitative efforts are undertaken and prohibits the proliferation of numerous claims in different forums against the debtor. The legislative history of section 362(a) underscores its importance:
>
>> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>>
>> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly reorganization or liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

*In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987) (quoting H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 340 (1978)) (alteration omitted). In sum, the automatic stay both "ensures a respite for the debtor so that it may attempt to reorganize or decide to liquidate and promotes the overriding bankruptcy policy of equal distribution of a debtor's assets among creditors." *Id.*

Here, Appellants themselves chose to file their motion directly in the bankruptcy court in an effort to receive a comfort order or, stated differently, a judicial declaration that the automatic

stay did not apply to their claims against the Archdiocese because of its pending chapter 11 bankruptcy case. The automatic stay, "a key component of federal bankruptcy law," exists because of title 11. *S.I. Acquisition*, 817 F.2d at 1146; *see also In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012). Necessarily, then, Appellants' motion before the bankruptcy court "involve[d] a cause of action created or determined by a statutory provision of title 11," or was at least one that "would have no existence outside of" the Archdiocese's bankruptcy. Indeed, both parties concede that the bankruptcy court had "arising under" jurisdiction to hear and determine Appellants' motion for a comfort order.[30] The Court agrees. Appellants' motion arises under title 11 because it "involve[s] a cause of action created or determined by a statutory provision of title 11," namely, the automatic stay provisions of 11 U.S.C. § 362(a). The Court next turns to the issue of whether the bankruptcy court correctly concluded that the automatic stay applies to Appellants' claims.

### B. Applicability of the Automatic Stay

The bankruptcy court concluded that the "stay actually exists pursuant to [section] 362(a)(1) because ... this is a suit that could have been brought ... against the Archdiocese before the petition date."[31] Generally, the bankruptcy court's findings of fact are reviewed for clear error, whereas its conclusions of law are reviewed *de novo*. *In re Ridgeway*, 973 F.3d 421, 425 (5th Cir. 2020). However, "[t]his Court reviews the scope of an automatic stay *de novo*."[32] *Reliant Energy*

---

[30] *See* R. Docs. 11 at 23-26; 12 at 7. Appellants urge, however, that the bankruptcy court exceeded its jurisdiction when it enforced the automatic stay against their claims because the district court had previously concluded that the claims were not related to the Archdiocese's bankruptcy case for purposes of bankruptcy subject-matter jurisdiction under 28 U.S.C. § 1334(b).

[31] R. Doc. 3-2 at 209.

[32] The Archdiocese argues that "[a]n appellate court reviews decisions granting or denying a motion to lift the automatic stay for abuse of discretion." R. Doc. 11 at 10 (citing *In re Moore & Moore Trucking, LLC*, 2020 WL 6122753, at *2 (Bankr. E.D. La. Sept. 14, 2020)). While the Court agrees that the bankruptcy court's discretion to terminate or modify the automatic stay is reviewed for abuse of discretion, its conclusions regarding the scope of the stay are nevertheless reviewed *de novo*. *Reliant*, 349 F.3d at 825. Even assuming that the bankruptcy court's decision regarding the scope or applicability of the stay is properly characterized as a mixed question of law and fact, it would still be reviewed *de novo*. *In re Okedokun*, 968 F.3d 378, 386 (5th Cir. 2020). Regardless, even if the bankruptcy court's conclusion that Appellants could have brought their claims prepetition was a pure issue of fact, it was still clearly erroneous for the reasons described in this Opinion.

*Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003); *see also In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007) ("We review the court's interpretation of the statute *de novo*."). Section 362(a)(1) provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –
>
> (1) the commencement or continuation, including the issuance of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ... .

11 U.S.C. § 362(a)(1). The automatic stay imposed by § 362 "does not apply to claims that arise post-petition." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008); *see also Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985) ("The stay simply does not apply to post-bankruptcy events."); 3 COLLIER ON BANKRUPTCY ¶ 362.03(c), at 362-27 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Actions on claims that arise after the commencement of the case are not stayed."). "A claim arises at the time an obligation is incurred, not when it is due." 3 COLLIER ON BANKRUPTCY ¶ 362.03(a), at 362-26; *see also Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1275-77 (5th Cir. 1994) (detailing the various ways courts have attempted to determine the point at which an obligation is incurred for purposes of establishing whether a claim has arisen prepetition). The Fifth Circuit has concluded that a prepetition relationship between the debtor and claimant is required for the automatic stay to apply when the debtor's conduct occurred prepetition, but the manifestation of the claimant's injury occurred post-petition. *See Lemelle*, 18 F.3d at 1276 (holding that "a claim arises at the time of

9

the debtor's [prepetition] negligent conduct forming the basis for liability *only if* the claimant had some type of specific relationship with the debtor at that time") (emphasis in original).[33]

Here, the bankruptcy court concluded that § 362(a)(1) stayed Appellants' case because the claims could have been brought prepetition. However, a close reading of Appellants' petition demonstrates that only post-petition conduct is implicated because Appellants *presently* seek to enroll at an area Catholic school but assert that they have been unable to do so because the Archdiocese, as part of its admissions process, requires applicants to answer questions that allegedly violate disability discrimination laws.[34] Notwithstanding the Archdiocese's contention that the complained-of admissions questions had been in place for many years prior to the commencement of the bankruptcy, the record on appeal is devoid of evidence to support the conclusion that Appellants *themselves* were aggrieved by these questions at any point prepetition.[35] Nor does the record show that any of the children seeking admission had a specific prepetition relationship with the Archdiocese that in some way relates to their post-petition injury – namely,

---

[33] Although the scope of *Lemelle* is unclear, the Fifth Circuit later applied the prepetition relationship test formulated in *Lemelle* outside of the negligence context. *See In re Egleston*, 448 F.3d 803, 813-14 (5th Cir. 2006).

[34] R. Doc. 3-4 at 292.

[35] The Archdiocese submits the declaration of its executive director and superintendent of Catholic education and faith formation, Raenell Houston, Ph.D., who states that the admissions application questions were written prior to the filing of the Archdiocese's bankruptcy petition. R. Doc. 3-2 at 201-02. Further, the Archdiocese argues that, at the hearing on the Appellants' motion for comfort order, Appellants "agreed" that "the admissions questions were drafted prior to the commencement of the Bankruptcy Case." R. Doc. 11 at 37. Indeed, the Archdiocese asserts that Appellants' counsel "stat[ed] that the alleged discrimination 'goes back decades.'" *Id.* (quoting R. Doc. 3-2 at 179). This is a mischaracterization of the transcript of the hearing before the bankruptcy court. The relevant portion of the transcript reads:

> The Court: When did that pattern [of alleged discrimination] start?
>
> Counsel for Appellants: I, I have no idea. It ... I'm assuming, your Honor, that it goes back decades, but we are complaining in our case – we're not seeking any damages to ... redress past wrongs ... .

R. Doc. 3-2 at 179-80. Later in the hearing, counsel for Appellants clarified that "the lawsuit ... only alleges current misconduct," *id.* at 185, and that while he "assume[s]" that the Archdiocese was asking the allegedly discriminatory admissions questions prepetition, the claimants he represents could not have brought the action prior to the bankruptcy. *Id.* at 186. Thus, contrary to the Archdiocese's view, Appellants did not effectively concede to the bankruptcy court that the class action could have been filed prepetition. And, regardless of *when* the admissions questions were drafted, nothing in the record supports the conclusion that Appellants are seeking relief for any prepetition injuries.

their being discouraged in the 2022 admissions cycle from seeking admission to an area Catholic school by having to answer questions about their disabilities. And, critically, Appellants disclaim entitlement to relief for injuries resulting from allegedly discriminatory admissions policies in the past – particularly, damages – and request only that the Archdiocese be enjoined from discriminating against children with disabilities in future admissions cycles.[36] Thus, the nature of Appellants' claims, and the relief they seek, demonstrate that Appellants could not have brought this action prepetition, and so the stay imposed by § 362(a)(1) does not apply.[37] *See, e.g.*, *Campbell*, 545 F.3d at 353; *In re Coupel*, 556 B.R. 746, 753-54 (E.D. La. 2016) (holding that § 362(a)(1) did not stay plaintiff's claims because they were predicated on post-petition conduct).

Although the bankruptcy court relied upon § 362(a)(1) to conclude that the automatic stay applied, the Archdiocese argues that the court was nevertheless correct because Appellants' claims implicate the stay provisions of § 362(a)(3).[38] That provision stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "Section 362(a)(3) thus implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor." *S.I. Acquisition*, 817 F.2d at 1148. Necessarily, then, the scope of a § 362(a)(3) stay is dependent in part upon the meaning of "property of the estate," which is defined expansively by the Bankruptcy Code to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Moreover, "when considering whether a creditor's cause of action ... seeks 'recovery or control' of property of the debtor, the Code's

---

[36] R. Doc. 3-4 at 290 ("The plaintiffs do not seek damages. Instead, they seek an order from the Court that the Archdiocese and other Catholic schools follow the law and stop discriminating against children with disabilities.").

[37] Nevertheless, nothing in this Opinion precludes the Archdiocese from seeking appropriate relief, even in this Court, should Appellants or any class ever seek damages for, or assert injuries based on, prepetition conduct.

[38] R. Doc. 11 at 38-40.

11

general policies of securing and preserving the debtor's property and ensuring equal distribution of that property to similarly situated creditors should remain a paramount concern." *In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir. 1999) (quoting *S.I. Acquisition*, 817 F.2d at 1152). In sum, then, "'[t]he scope of the automatic stay under section 362(a)(3) ... depends both upon the policies expressed in the Bankruptcy Code, considered as a whole, and upon the particular meaning of the phrase "all legal or equitable interests of the debtor in property."'" *S.I. Acquisitions*, 817 F.2d at 1149 (quoting *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1273 (5th Cir. 1983)). Recently, when determining whether a non-debtor's continued possession, post-petition, of estate property violates the stay imposed by § 362(a)(3), the Supreme Court observed "that § 362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *City of Chi. v. Fulton*, 141 S. Ct. 585, 590 (2021). Stated differently, "§ 362(a)(3) prohibits *collection efforts* outside the bankruptcy proceeding that would change the status quo." *Id.* at 591 (emphasis added).

Applying this controlling guidance regarding the scope of a § 362(a)(3) stay, the Court finds that Appellants' claims do not seek to possess or control property of the bankruptcy estate. Appellants' claims are neither "collection efforts" nor "affirmative acts that would disturb" the Archdiocese's legal or equitable interests in any estate property. *Fulton*, 141 S. Ct. at 590-91. Instead, Appellants seek to enjoin current and future conduct that they allege to be discriminatory by requiring the Archdiocese to refrain from asking prospective students about their disabilities – conduct Appellants argue is unlawful and that necessarily occurred and will occur post-petition. Federal courts around the country have concluded that suits based on allegedly tortious or unlawful post-petition conduct are not subject to the automatic stay provisions of § 362(a). *See, e.g.*, *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760-61 (6th Cir. 2012) (holding that

12

automatic stay provisions were inapplicable to post-petition action to enjoin infringement of plaintiffs' trademarks and service marks); *Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56, 58-60 (D.N.J. 2000) (concluding that plaintiff's patent infringement suit based on post-petition conduct was not stayed by § 362(a)(3)); *Amplifier Rsch. Corp. v. Hart*, 144 B.R. 693, 694-95 (E.D. Pa. 1992) (holding that plaintiff's suit seeking to enjoin ongoing torts was not subject to § 362(a)(3)). Further, of "paramount concern" to the scope of a § 362(a)(3) stay, Appellants' claims will not undermine "the [Bankruptcy] Code's general policies of securing and preserving the debtor's property and ensuring equal distribution of that property to similarly situated creditors," because Appellants do not seek proceeds from estate property. *In re Schimmelpenninck*, 183 F.3d at 359. They seek only to enjoin post-petition conduct they allege to be discriminatory. Thus, Appellants' claims are not stayed by operation of § 362(a)(3).[39]

Nevertheless, the Archdiocese attempts to characterize Appellants' request for attorney's fees and costs made in their action to enjoin unlawful post-petition conduct as an act of possession of or control over estate property.[40] But the case cited by the Archdiocese for this proposition, *In re City of San Bernardino*, 558 B.R. 321, 331 (C.D. Cal. 2016), is unpersuasive. In *San Bernardino*, the court held that plaintiff's post-petition suit against the city for its alleged unconstitutional search of an apartment complex was subject to § 362(a)(3). *Id.* at 333. The plaintiff sought to enjoin the city from conducting investigative searches during safety inspections without first obtaining criminal search warrants and requested attorney's fees and costs. *Id.* at 325. The court there reasoned that "a citywide injunction curtailing the City's search and seizure practices would force the City to spend money to reduce crime that it may not otherwise have

---

[39] Appellants are reminded, however, that if the scope of the requested relief is expanded to include the possession of or control over estate property, the automatic stay provisions of § 362(a)(3) may well apply to their claims.

[40] R. Doc. 11 at 38-40.

spent," *id.* at 329, and concluded that "[a] lawsuit unquestionably seeks to 'exercise control' over the estate's 'property' when it seeks to enjoin the debtor from certain uses of its income-producing property." *Id.* at 328. The court also concluded that "an action that seeks to recover attorneys' fees from the debtor is unquestionably one that attempts to obtain possession of the property of the debtor, and is thus subject to stay under § 362(a)(3)."[41] *Id.* at 331. Crucially, the lynchpin for the court's decision was the fact that "the automatic stay does not leave [plaintiff] without a remedy for [the city's] violations," *id.* at 333, because "[t]he plaintiff could have obtained the same injunction in an adversary proceeding before the bankruptcy court." *Id.* at 328.

This Court finds *San Bernardino* distinguishable for two reasons. First, Appellants do not have the luxury of seeking injunctive relief in an adversary proceeding before the bankruptcy court, because their claims were remanded to state court after the district court concluded that the action was not "related to" the Archdiocese's bankruptcy case as necessary to afford jurisdiction under 28 U.S.C. § 1334(b).[42] Without jurisdiction over Appellants' claims, the bankruptcy court cannot enjoin the Archdiocese from including the allegedly discriminatory questions in its admissions applications. But, in a proverbial Catch-22, because the bankruptcy court found that the stay applied, Appellants cannot yet secure an injunction in state court.

Second, the Court disagrees with the implicit reasoning in *San Bernardino* that an action to enjoin unlawful post-petition conduct, together with a request for attorney's fees, disserves the Bankruptcy Code's policies of preserving the debtor's estate – a necessary consideration in determining the scope of § 362(a)(3). *See S.I. Acquisitions*, 817 F.2d at 1149. Where, as here, a

---

[41] The only authority relied upon by the *San Bernardino* court in reaching this conclusion is *In re City of Stockton*, 499 B.R. 802, 807 (Bankr. E.D. Cal. 2013). In *City of Stockton*, however, the bankruptcy court merely observed, but did not conclude, that "a monetary award in the form of fees, costs, or otherwise leaves a *potential* for offending § 362(a)(3)." *Id.* (emphasis added).

[42] Notably, the district court's previous remand of Appellants' action to state court is not the subject of this appeal, nor could it be, because orders remanding an action to state court for lack of bankruptcy subject-matter jurisdiction are generally unappealable. 28 U.S.C. § 1447(d).

14

bankrupt entity continues to operate post-petition and continues to engage in allegedly unlawful conduct, the Code does not preclude actions to enjoin such behavior. *See Larami*, 244 B.R. at 60 ("Section 362(a)(3) was intended to prevent interference with a bankruptcy court's orderly disposition of the property of the estate, it was not intended to preclude post-petition suits to enjoin unlawful conduct. If this section were read to prevent the injunctive relief sought here, bankrupt businesses which operated post-petition could violate [plaintiffs'] rights with impunity. The Court declines to read § 362(a)(3) so broadly.") (internal citation omitted); *Dominic's Rest.*, 683 F.3d at 761 ("[Defendant]'s commission of a tort is not protected by the Bankruptcy Code."). And the Court is aware of no binding authority that would necessitate the conclusion that, by appending a request for attorney's fees to a suit to enjoin unlawful post-petition conduct, a case that would not be stayed under the long line of authorities like *Larami* and *Dominic's Restaurant* would become subject to a stay under § 362(a)(3). *San Bernardino* is better understood as applying a "damages"-like theory threatening prepetition municipal assets, as the court there was concerned that the citywide injunction transforming the city's search-and-seizure practices would compel the city to spend monies it would not otherwise have spent, thereby altering the city's uses for its income-producing property. Therefore, the Court rejects the Archdiocese's contention that § 362(a)(3) applies to Appellants' claims.

*   *   *   *

The bankruptcy court correctly determined that it had "arising under" subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(b) to hear Appellants' motion for a comfort order. However, it erred in concluding that Appellants' claims are stayed by operation of 11 U.S.C. § 362(a)(1), as the record does not support a finding that Appellants could have brought the action

prepetition.  Because no other provision of § 362(a) warrants the bankruptcy court's conclusion that the automatic stay applies, its judgment must be reversed.[43]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the bankruptcy court's order denying Appellants' motion for comfort order is REVERSED.  Appellants' claims against the Archdiocese in the matter remanded to state court are not subject to the bankruptcy stay.

New Orleans, Louisiana, this 28th day of July, 2023.

                                        BARRY W. ASHE
                                      UNITED STATES DISTRICT JUDGE

---

[43] Given the disposition of the appeal, the Court does not – and need not – reach Appellants' argument that collateral estoppel foreclosed the bankruptcy court from concluding that the automatic stay applies to their claims.